The UNITED STATES of
America, Plaintiff,

v.

Frank N. CARPENTIERI, Defendant.

No. 96 Civ. 6460.

United States District Court,
S.D. New York.

Oct. 26, 1998.

Mary Jo White, United States Attorney for the Southern District of New York, New York City, by Rachel D. Godsil, for Plaintiff.

Law Offices of Paul Kalker, P.C., Melville, NY, by Paul Kalker, for Defendant.

**OPINION**

SAND, District Judge.

Plaintiff United States of America (hereinafter, the "Government") brings this action against Frank Carpentieri (also "Defendant") under the False Claims Act, 31 U.S.C. §§ 3729, *et seq.,* and federal common law. The Government alleges that Mr. Carpentieri made, and caused to be made, false statements regarding his medical history in his application for employment to the United States Postal Service, and in his subsequent applications for disability benefits. Presently before the Court is the Government's Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56. Also before the Court is Mr. Carpentieri's Cross–Motion to Dismiss Plaintiff's Complaint (a) for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6); and (b) on the theory that § 8128(b) of the Federal Employees' Compensation Act (hereinafter, "FECA"), 5 U.S.C. §§ 8101 *et seq.,* prohibits this Court from hearing the instant action.[1] For the reasons explained below, we (a) deny the Defendant's 12(b)(1) cross-motion as to the Government's two claims under the False Claims Act and reserve as to the remaining three claims under federal common law; (b) deny Defendant's 12(b)(6) cross-motion; (c)

---

1. Mr. Carpentieri brings this cross-motion pursuant to Fed.R.Civ.P. 12(b)(6). (*See* Def. Mem. I at 3.) However, much of his argument is based on the claim that this Court lacks the subject matter jurisdiction necessary to hear the action. (*See id.* at 6–9.) Therefore, we assume Mr. Carpentieri's cross-motion is made pursuant to Fed.R.Civ.P. 12(b)(1) as well.

ask the parties for supplemental briefs on the question of injury and damages; and (d) postpone consideration of the Government's summary judgment motion until the Court receives the requested briefs.

## BACKGROUND

The facts set forth below are based on the Government's 56.1 statement. These facts are "undisputed" as Defendant failed to contest the Government's statement. (*See* Local Rule 56.1(c).)

On June 1, 1988, Mr. Carpentieri applied for a position as a postal carrier with the United States Postal Service ( hereinafter, "USPS"). In that regard, Mr. Carpentieri completed a PS Form 2485 in which he certified as true that: (1) he had never been refused employment or been unable to hold a job because of an inability to perform certain motions, to assume certain positions or for other medical reasons; (2) he had never required special or restricted job assignments due to illness, injury or physical impairments; (3) he had never been treated for other than minor medical conditions; (4) he had never received compensation or a case settlement from an employer or insurance company due to an injury; (5) he had never received an x-ray, or an other special examination; and (6) he had never had a back injury.

Despite his statements to the contrary, Mr. Carpentieri had been involved in a motor vehicle accident on December 9, 1986, for which he received medical care, including an x-ray and at least one Magnetic Resonance Imaging examination. This accident resulted in a back injury which rendered Mr. Carpentieri "totally disabled" for a period of time. Indeed, a doctor certified that he was unable to work from February 3, 1987, until at least July 8, 1988. Furthermore, Defendant received lost wage benefits from Allstate Insurance as a result of the 1986 accident.

Based upon Defendant's statements in his PS Form 2485, the USPS determined that Mr. Carpentieri was qualified for the physically demanding position of postal carrier, and offered him a position. Mr. Carpentieri accepted the job. The Government asserts, and the Defendant does not dispute, that the USPS would not have found the Defendant physically qualified for the position had it

been aware of the 1986 accident and subsequent disability.

On August 24, 1988, a few months after he began his new job, Mr. Carpentieri reported that he had been involved in a motor vehicle accident while driving a USPS vehicle. On August 25, 1988, Defendant submitted an application for benefits under FECA to the Department of Labor (hereinafter, "DOL"). During his treatment and evaluation by doctors for the 1988 accident, Defendant knowingly made false statements to his physicians concerning his medical history and earlier back injury. As a result, Defendant caused false physician reports that omitted his prior injury to be submitted to the DOL in support of his application for benefits. Pursuant to his application, Defendant had, as of January 15, 1998, received 127 checks totaling $145,-704.45 and medical benefits worth $33,333.12 from the Government.

## DISCUSSION

### I. *Jurisdiction*

■ Where a court is presented with several matters including one related to subject matter jurisdiction, the court shall first address the jurisdiction issue. *See Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1946); *Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n,* 896 F.2d 674, 678 (2d Cir.1990). Here, Defendant asserts that 5 U.S.C. § 8128(b) prohibits this Court from hearing the instant action. The Government, on the other hand, claims that § 8128(b) does not preempt the False Claims Act, 31 U.S.C. §§ 3729–3733, or the Government's right to recover fraudulently obtained funds under federal common law principles.

■ Defendant's jurisdictional argument centers around FECA's preclusion-of-review provision codified in 5 U.S.C. § 8128(b). This section provides that the Secretary of Labor's determination of a claimant's eligibility for FECA benefits is final. More specifically, the provision reads as follows:

The action of the Secretary or his designee in allowing or denying a payment under this subchapter is—

(1) final and conclusive for all purposes and with respect to all questions of law and fact; and

(2) not subject to review by another official of the United States or by a court by mandamus or otherwise.

5 U.S.C.A. § 8128(b) (West 1998).

Pursuant to 5 U.S.C. § 8145(2), the Secretary has delegated responsibility for FECA management to the Office of Workers' Compensation Programs (hereinafter, "OWCP"). The OWCP has allowed, and apparently continues to allow, payments to Mr. Carpentieri under FECA. Defendant asserts that any consideration by this Court of Plaintiff's claims would, in essence, constitute a review of the OWCP's award of FECA benefits to Defendant, in violation of § 8128(b). Mr. Carpentieri claims that it is impossible for this Court to determine that his conduct was fraudulent in regards to obtaining his FECA benefits without disturbing the OWCP's finding that Mr. Carpentieri is entitled to the benefits. In further support of his position, Defendant notes that the application of the door-closing provision to the instant situation would not strip the Government of its ability to fight fraud in the area of FECA benefits. Namely, he points to the following congressional provisions to suggest that the Government has other, congressionally authorized, methods to combat fraud under FECA than the one it seeks to employ in the instant action: (a) forfeiture of FECA benefits upon a claimant's criminal conviction for fraud under 5 U.S.C. § 8148; (b) recoupment of overpayment of FECA benefits upon OWCP's finding that an overpayment was made under 5 U.S.C. § 8129; and (c) forfeiture of the right to compensation where a claimant provides false information regarding earnings from employment sources under 5 U.S.C. § 8106(b).

The Government contends that while 5 U.S.C. § 8128(b) does prevent a court from reviewing a determination by the OWCP of whether or not to award FECA benefits, the Section does not apply to the claims the Government has brought against Mr. Carpentieri. The Government argues that a court can find that an individual has violated the False Claims Act and federal common law without disturbing the findings of the OWCP since the two inquiries involve different questions of fact and law. According to the Government, if this Court entertains the Government's claims, we would be inquiring into the Defendant's conduct and knowledge, rather than whether the forms and medical opinions he presented to the OWCP, if not fraudulent, entitled him to FECA benefits. Only an inquiry into the latter is barred by § 8128(b), argues the Government.

We find that 5 U.S.C. § 8128(b) does not, as an initial matter, bar this court from hearing the Government's claims under the False Claims Act. In short, we find that an inquiry into whether Mr. Carpentieri has violated § 3729(a)(1) of the Act simply does not constitute a review of the OWCP's action in allowing or denying a payment under FECA, as prohibited by 5 U.S.C. § 8128(b).[2]

The logical starting point to determine whether § 8128(b) closes the door to judicial review of the Government's claims is the statute itself. Section 8128(b) does clearly prohibit judicial review of the Secretary of Labor's, or his designee's, determination of whether to deny or award benefits under FECA. Indeed, the Supreme Court has pointed to 5 U.S.C. § 8128(b) as an example of the "unambiguous and comprehensive" language Congress uses when it "intends to bar judicial review altogether." *Lindahl v. Office of Personnel Management*, 470 U.S. 768, 779–80 & n. 13, 105 S.Ct. 1620, 84 L.Ed.2d 674 (1985).

Despite the clear language of the statute, we agree with the Government's assertion that the present action does not necessarily fall under the purview of § 8128(b). An inquiry into whether Mr. Carpentieri falsified his initial employment papers and his claim forms for FECA benefits does not by itself constitute review of the OWCP's determination that Mr. Carpentieri's submission, if not fraudulent, establishes eligibility for benefits. Indeed, in this case the issues appear to be two, quite separate inquiries. The Government's claims demand an examination of

**2.** The Government initially sought termination of Defendant's FECA benefits. (*See* Gov't Mem. I at 27.) At oral argument, the Government withdrew this claim. (*See* June 25, 1988 Tr. at 8.) To the extent that the Government still seeks any such remedy, we find that § 8128(b) clearly bars the Court from terminating such benefits.

whether or not Mr. Carpentieri supplied information he knew to be false to the federal government. The OWCP's inquiry involved the question of whether the Defendant qualified for benefits under the terms of FECA. While a finding that Mr. Carpentieri did in fact falsify documents to obtain FECA benefits would be philosophically incompatible with the ongoing payment of benefits to Mr. Carpentieri, it nevertheless would not constitute a judicial review of the OWCP determination.[3] This Court could make such a finding without overturning or relying on any of the OWCP's findings.

The Court is compelled to note that in the instant case, the Defendant, by failing to file his own 56.1 statement, does not dispute the facts asserted by the Government. (*See* Local Rule 56.1(c).) We can hypothesize cases in which a defendant might, for example, assert that his present injuries for which he receives benefits are in no way related to the past injuries he omitted or denied in his application for benefits. Such a factual scenario might bring a court closer to an inquiry that would overlap with the OWCP's determination. The Court makes no holding today on the effect of § 8128(b) on cases in which resolution of the controversy requires factual determinations which overlap those of the OWCP.

■ The instant case, however, does not present such difficulties. Here, the False Claims Act does not collide with the sphere protected by § 8128(b). It is well-established in our jurisprudence that repeals by

implication are disfavored and that where effect can be given to two statutes, such effect should be so given. *See, e.g., Traynor v. Turnage*, 485 U.S. 535, 548, 108 S.Ct. 1372, 99 L.Ed.2d 618 (1988) (" 'The courts are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective.' ") (quoting *Morton v. Mancari*, 417 U.S. 535, 551, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974)); *see also United States v. General Dynamics Corp.*, 19 F.3d 770, 774 (2d Cir.1994). FECA contains no provision clearly expressing a congressional intent to preempt the False Claims Act.[4] Such intent may be manifested by a " 'positive repugnancy between the provisions' " in the respective statutes. *United States v. Batchelder*, 442 U.S. 114, 122, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979) (quoting *United States v. Borden Co.*, 308 U.S. 188, 199, 60 S.Ct. 182, 84 L.Ed. 181 (1939)). No repugnancy exists between, on the one hand, keeping the determination of an award or denial of benefits under FECA solely within the purview of the Secretary of Labor, as called for by § 8128(b), and, on the other hand, allowing the Government to pursue claims against individuals who may have falsified their forms when applying for such benefits, as the False Claims Act authorizes. Furthermore, the legislative history of § 8128(b) does not indicate a clear intention by Congress to prohibit the Government's use of the False Claims Act to fight fraud that may occur in relation to FECA.[5] Absent

---

**3.** Such incompatibility apparently existed before the enactment of 5 U.S.C. § 8148 in the area of criminal fraud. Prior to the enactment of § 8148 in 1994, an individual could be convicted of criminal fraud in obtaining FECA funds but nevertheless continue to receive the benefits while in prison. *See* 139 Cong. Rec. E2857–02 (November 10, 1993) (statement of Rep. Fawell). The enactment of § 8148, which provides for automatic forfeiture of FECA benefits when an individual is convicted of fraudulent acts in relation to the FECA benefits, solved this problem. *See* 5 U.S.C.A. § 8148 (West 1998). Presumably, Congress could take similar steps to resolve any parallel issues arising from civil fraud judgments against FECA recipients if Congress deems it necessary.

**4.** When FECA was first passed in 1916, it did contain a *general* provision stating: "That all Acts or parts of Acts inconsistent with this Act

are hereby repealed:" Provided however, [the Act be applied only prospectively and that certain conditions be placed on compensation for injuries resulting from the Panama Railroad Company]. 'Act of Sept. 7, 1916, ch. 458, § 41, 39 Stat. 742, 750 (1916). As discussed above, it is the Court's belief that the False Claims Act is not inconsistent with FECA's door-closing language, a provision, which, incidentally, did not come into existence until 1924.

**5.** The legislative history of § 8128(b) does nevertheless reveal some interesting facts. *See generally Czerkies v. United States Dep't of Labor*, 73 F.3d 1435, 1440–41 (7th Cir.1996). When FECA was first enacted in 1916, it contained no provision prohibiting review of the Secretary of Labor's determinations. In 1924, however, the following language was added: *"In the absence of fraud or mistake in mathematical calculation, the*

such a clear intention, we believe the appropriate course of action is to give meaning to both statutes.

The recent decision by the Second Circuit in *United States v. General Dynamics*, 19 F.3d 770 (2d Cir.1994) supports our position. In *General Dynamics*, the court addressed whether the Anti–Kickback Act (hereinafter, "AKA") preempted remedies available under the False Claims Act and federal common law, finding that it did not. The Second Circuit reviewed the Supreme Court's statements in *United States v. Neifert–White Co.*, 390 U.S. 228, 232, 88 S.Ct. 959, 19 L.Ed.2d 1061 (1968), that the False Claims Act was " 'intended to reach all types of fraud, without qualification, that might result in financial loss to the Government' " and that the Court "has consistently refused to accept a rigid, restrictive reading" of the Act. *General Dynamics*, 19 F.3d at 773 (quoting *Neifert–White*, 390 U.S. at 232, 88 S.Ct. 959). While the main holding of *General Dynamics* can be distinguished from the instant case, it nevertheless illustrates both the Supreme Court's and the Second Circuit's reluctance to hinder remedies available under the False Claims Act.

In addition to the case law on preemption, some relevant case law on § 8128(b) exists.

While few courts have encountered the particular issue we face in the present action,[6] several entities have reviewed § 8128(b) in other contexts which lend the Court assistance in its findings today. First, courts have held that when the OWCP seeks, pursuant to § 8129, recoupment of funds that it determines were overpaid to an employee, judicial review of that action is not barred by § 8128(b). *See Wacks v. Reich*, 950 F.Supp. 454, 459 (D.Conn.1996) (holding that while courts do have jurisdiction to consider overpayment determinations, claimants may not use such claims simply to obtain judicial review of a denial of benefits); *United States v. Vetti*, 681 F.Supp. 986, 991 (D.Conn.1988).

Second, the Merit Systems Protection Board (hereinafter, "MSPB") has found that § 8128(b) does not hinder its ability to hear actions involving disputes that arise when an employing agency seeks to remove or discipline an employee whom the agency has found to have falsified information in order to receive FECA benefits. *See, e.g., Daniels v. United States Postal Service*, 57 M.S.P.R. 272, 279 (1993) (holding that "OWCP's determination as to whether an employee is entitled to FECA benefits does not preclude the Board from addressing the specific issue of whether an agency has sustained a charge of

finding of facts in, and the decision of the commission upon, the merits of any claim presented under or authorized by this Act if supported by competent evidence shall not be subject to review by any other administrative or accounting officer, employee, or agent of the United States." Act of June 5, 1924, ch. 261, § 37, 43 Stat. 389 (emphasis added). In 1945, FECA was amended again. Section 4 of the amendment related to compensation for federal employees who were non-citizens. *See* Act of July 28, 1945, ch. 328, § 4, 59 Stat. 503, 503–04. The penultimate sentence of § 4 contained the language now in § 8128(b). *See id.* at 504. Notably, when the amendment was adopted, Congress did not remove or alter the language of the door-closing provision inserted via the 1924 amendment. (In *Czerkies*, 73 F.3d at 1441, the Seventh Circuit interpreted this (in)action to mean that the door-closing provision in § 4 was intended to apply only to the awards made or denied under that particular section.)

It was not until 1966 that Congress replaced the language provided by the 1924 amendments, which contained the phrase "in the absence of fraud," with the wording now found in § 8128(b). *See* 80 Stat. 545–46 (1966); H.R.Rep. No. 901, 89th Cong., 1st Sess. at 146

(1965). Interestingly, these 1966 amendments were intended to be technical in nature, making no substantive changes. *See* H.R.Rep. No. 901 at 1, 3. The language from the 1924 amendments was "omitted as included in" the provision that is now § 8128(b). *See id.* at 146. Despite the fact that no intent to broaden the scope of the door-closing provision that had previously existed was demonstrated, the "technical" amendments effectively did just that. Thus, as the Seventh Circuit noted in *Czerkies*, it is quite possible that the sweeping preclusion language in § 4 of the 1945 amendments, which related to non-citizens, was accidentally substituted for the narrower door-closing provision in the 1924 amendment. *See Czerkies*, 73 F.3d at 1441. Nevertheless, given the fact that Congress has had 53 years to correct the mistake, if indeed it was a mistake, but has declined to do so, this Court attaches little import to this specific route by which § 8128(b) came into existence.

6. *United States v. Bottini,*19 F.Supp.2d 632 (W.D.La.1997), like the case at bar, involved an action by the Government for civil penalties under the False Claims Act. The court found jurisdiction under 28 U.S.C. §§ 1331 and 1345 without further discussion.

falsification"). The Federal Circuit affirmed such a decision by the MSPB, noting its opinion that § 8128(b) "obviously relates only to the Labor Department's decisions on the making or denying of compensation awards." *Minor v. Merit Systems Protection Board,* 819 F.2d 280, 283 (Fed.Cir.1987).

While neither category of cases mentioned above binds the Court, each does illustrate the dangers of giving § 8128(b) too broad a reading. If we were to read that Section, as Defendant would have us, to bar judicial review not only of a determination as to eligibility for benefits, but also of any issues that touch upon such a determination, many difficulties would arise. Federal agencies would be constrained in their internal management efforts; courts would be divested of the power to review recoupment determinations; and the Government's ability to recover fraudulently obtained FECA funds under the False Claims Act would be hindered. These results would be judicially acceptable if § 8128(b) on its face barred review of all issues *related* to the Secretary of Labor's award or denial of FECA benefits. But where the statute by its own language does not bar all such review, and where there is no other reason to believe that Congress intended any such results when it enacted § 8128(b), the Court cannot give the Section such a broad scope.

We have also considered whether § 8128(b) can be construed to embody a congressional determination that the possible risks of precluding all further judicial review are outweighed by the desire to free disability claimants from the costs of additional litigation against the Government. We find nothing in the language of the statute or its legislative history to support a conclusion that Congress made such a determination. Moreover, since our holding does not entail a re-litigation of issues already presented to and resolved by the OWCP, (*see supra* pp. 435–436), any concern about overburdening a disability claimant is mitigated.

For the aforementioned reasons, we find that § 8128(b) does not bar the Court from reviewing the Government's claims under the False Claims Act. The Court reserves judgment on the effect of § 8128(b) on the federal common law claims, since, as the Government itself points out, the issue will become moot if the Government receives the full measure of recovery under the False Claims Act. *See United States v. Davis,* 809 F.2d 1509, 1511 n. 3 (11th Cir.1987); *see also* Gov't Mem II at 5. The Court is hesitant to make unnecessary rulings which have precedential effect based on an unusual set of facts. Should the Government's motion for summary judgment on the False Claims Act be denied, the Court will decide the remaining jurisdictional issues at that time.

## II. Defendant's Cross–Motion Pursuant to Fed.R.Civ.P. 12(b)(6)

Defendant, in his 12(b)(6) cross-motion, appears to argue that the Government's complaint should be dismissed because an employee's purported deception to secure employment will not necessarily disqualify the employee from receipt of workers' compensation benefits. (*See* Def. Mem. I at 5–6.) We deny this cross-motion. Defendant's argument that he may be entitled to benefits despite any alleged falsification is misplaced. Such a determination lies entirely within the realm of the OWCP. Since the Government's claims will only proceed to the extent that the Court can avoid a re-evaluation of OWCP's determinations, the issue of whether Mr. Carpentieri should continue to receive benefits has no bearing on the instant motion to dismiss.

## III. Summary Judgment and Damages

Only cursory treatment was given to the complex issue of damages in the Defendant's briefs. Perhaps this was due to a confidence in the outcome on the jurisdictional question which now has been proven unfounded. For this reason, we request that both parties provide the Court with supplemental briefs on the issue of damages within thirty days of the date of this opinion. Papers should include a briefing on how the following may effect the determination of damages: (a) § 8128(b)'s door-closing provision; and (b) the OWCP's continuing determination that the Defendant is entitled to FECA benefits. Briefs are not, however, limited to these aspects of the issue of damages. The Government should also clarify whether or not it

seeks compensation for medical benefits paid to the Defendant.

As the issue of injury to the Government is intertwined with several of the Government's claims, we postpone decision on the summary judgment motion until the Court receives the requested briefs.

SO ORDERED.