**Opinions of the United States Court of Appeals for the Third Circuit**



11-27-2001

# Natl Assn Letter v. US Postal Ser

Precedential or Non-Precedential:

Docket 01-1407

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"Natl Assn Letter v. US Postal Ser" (2001). *2001 Decisions.* Paper 275.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/275

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed November 27, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-1407

NATIONAL ASSOCIATION OF LETTER CARRIERS,
AFL-CIO
        Appellant

v.

UNITED STATES POSTAL SERVICE

On Appeal from the United States District Court
for the District of New Jersey
(D.C.Civ. No. 00-01083)
District Judge: Honorable Alfred J. Lechner, Jr.

Argued October 11, 2001

Before: BECKER, Chief Judge, and SCIRICA and
GREENBERG, Circuit Judges

(Filed: November 27, 2001)

        Joseph J. Vitale (argued)
        Keith E. Secular
        Cohen, Weiss & Simon
        330 West 42nd Street
        New York, NY 10036

         Attorneys for Appellant

Robert J. Cleary
United States Attorney
Susan Handler-Menahem
Assistant United States Attorney
Office of the United States Attorney
970 Broad Street
Room 700
Newark, NJ 07102

Eric C. Scharf
Managing Counsel
Stephen J. Boardman (argued)
United States Postal Service
475 L'Enfant Plaza, S.W.
Washington, D.C. 20260

 Attorneys for Appellees

OPINION OF THE COURT

GREENBERG, Circuit Judge.

I. INTRODUCTION

This matter comes on before this court on appeal from an order of the district court entered December 29, 2000, granting a summary judgment upholding an arbitrator's decision that the United States Postal Service had "just cause" to terminate letter carrier Carmelita Colatat's employment. The arbitrator found that Colatat knowingly filed an application for workers' compensation benefits under the Federal Employee Compensation Act ("FECA"), falsely claiming that she suffered a work-related knee injury and that this conduct constituted "just cause" for her dismissal. Her union, the National Association of Letter Carriers, AFL-CIO ("NALC"), brought this action and brings this appeal, contending that the arbitrator erred by rendering a decision inconsistent with a determination of the Office of Workers' Compensation Programs ("OWCP") that she had been injured at work. In particular, NALC argues that OWCP's factual determinations were binding on the arbitrator pursuant to 5 U.S.C. S 8128(b).

## II. FACTS AND PROCEDURAL HISTORY

This case arose from events on October 6, 1998, when Colatat reported to her supervisor that her knee was in pain and that she could not walk. As a result, she was taken in an ambulance to a hospital emergency room for treatment. Two days later, Colatat submitted a form CA-1, "Federal Employee's Notice of Traumatic Injury and Claim for Continuation of Pay or Compensation," that was an application to the Department of Labor (DOL) for workers' compensation benefits under FECA. On the CA-1 form Colatat indicated that she injured her knee while lifting 60-pound trays of mail at work. The Postal Service contested her claim by submitting written statements from other postal employees who heard Colatat admit she had been injured outside of work.

OWCP, an agency of Department of Labor in charge of claims made under FECA, denied Colatat's claim on November 25, 1998, crediting the statements of her fellow postal employees. On January 22, 1999, Colatat asked OWCP to reconsider her application and on June 30, 1999, OWCP reversed its earlier decision and granted her FECA benefits. OWCP in its June 30 decision found that Colatat's claim was "supported by a neighbor's statement that she was performing yard work [on October 6, 1998] and evidenced no knee problems and statements by her co-workers that she initially displayed no signs of such a problem upon reporting to work."

On January 4, 1999, during the period between OWCP's two decisions, the Postal Service, based on an additional investigation of the claim by the Postal Inspection Service, issued Colatat a Notice of Removal charging that she submitted the form CA-1 knowing it to be false. The postal workers' collective bargaining agreement authorized this action as it provides that the service may terminate postal workers for "just cause," but establishes a grievance procedure culminating in a hearing before an arbitrator to determine the existence of "just cause." NALC filed a timely grievance challenging Colatat's removal, which was denied at each step of the grievance procedure, following which NALC sought arbitration. The arbitrator heard Colatat's appeal from the grievance procedure on June 4, 1999, and

October 29, 1999, and then held in an award dated December 15, 1999, that Colatat had submitted the form CA–1 seeking FECA benefits knowing it to be false and that her conduct constituted just cause for her removal from service. When making his award, the arbitrator was aware of the June 30, 1999 OWCP decision, but did not feel bound by it.

Thereafter NALC instituted this action contending that the court should vacate the arbitration award because it was contrary to public policy and violated the plain language of the postal workers' collective bargaining agreement. In addition, NALC sought a writ of mandamus compelling the Postal Service to reinstate Colatat to her position. The union predicated its argument on section 8128(b) which it contended bound the arbitrator to OWCP's factual determinations. It argued that the arbitrator could not validly uphold Colatat's dismissal because OWCP had awarded her benefits and therefore did not believe that she filed a false CA–1 form. After filing its answer to the complaint, the Postal Service moved for and obtained a summary judgment upholding the arbitration order. NALC then filed this appeal.[1]

On April 19, 2001, while this appeal was pending, OWCP, on motion of the Secretary of Labor, reversed its decision awarding Colatat workers' compensation benefits, as it concluded that in light of all of the evidence, Colatat had not demonstrated that she suffered a work–related injury. In determining to take this action, OWCP was impressed that the ambulance driver, who had responded on October 6, 1998, to the report of the injury, submitted a statement to a Postal Service investigator stating that Colatat told him that "it was an old injury that had flared up[and] . . . upon questioning stated that it did not happen at work." OWCP also was impressed by a statement of an emergency medical technician, who was in the ambulance, reciting that Colatat told him that "she had hurt her knee the night before playing tennis, [but] didn't feel it necessary to call

_____

1. The district court had jurisdiction to review the arbitrator's award under 39 U.S.C. S 1208 and 28 U.S.C. S 1331, and we have jurisdiction pursuant to 28 U.S.C. S 1291.

4

911 that night because she felt the pain would go away." As might be expected, the Postal Service moved for this court to take judicial notice of OWCP's April 19, 2001 decision, and we granted its motion.

## III. DISCUSSION

The question for us to answer is whether the arbitrator should have followed OWCP's factual conclusions, which, at the time he ruled, were consistent with Colatat's claim. NALC urges, of course, that he should have done so and thus that the district court erred in granting the Postal Service summary judgment. We exercise plenary review on this appeal. See Lucent Info. Mgmt., Inc. v. Lucent Tech., Inc., 186 F.3d 311, 315 (3d Cir. 1999). Of course, while we can affirm only if there is no genuine issue as to any material fact and the Postal Service is entitled to a judgment as a matter of law, Fed. R. Civ. P. 56(c), it is obvious that the issues on appeal are purely matters of law.

The Supreme Court has held that "[j]udicial review of a labor-arbitration pursuant to [a collective bargaining] agreement is very limited." Major League Baseball Players Ass'n v. Garvey, 121 S.Ct. 1724, 1728 (2001) (per curiam). Thus, a court should not "review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement." Id. Therefore, if the arbitration award draws its essence from the collective bargaining agreement, a court should uphold it. See United Parcel Serv. v. Int'l Bhd. of Teamsters, 55 F.3d 138, 141 (3d Cir. 1995). This rule of deference derives from the Court's recognition that the parties to the collective bargaining agreement "bargained for" a procedure in which an arbitrator would interpret the agreement. See Eastern Associated Coal Corp. v. United Mine Workers, 531 U.S. 57, 62, 121 S.Ct. 462, 466 (2000). We have recognized the narrow scope of review that district courts exercise over labor arbitrators' awards as we have "wryly concluded, `[i]t should be clear that the test used to probe the validity of a labor arbitrator's decision is a singularly undemanding one.' " United Trans. Union Local 1589 v. Suburban Transit Corp., 51 F.3d 376, 379 (3d Cir. 1995) (quoting News Am.

5

Publ'ns, Inc. v. Newark Typographical Union, Local 103, 918 F.2d 21, 24 (3d Cir. 1990)).

The Supreme Court nevertheless has recognized two situations in which a reviewing court may vacate an arbitration award. First, the reviewing court may vacate the award if the arbitrator's interpretation of the collective bargaining agreement was "contrary to public policy." Eastern Associated, 531 U.S. at 62, 121 S.Ct. at 467 (quoting W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber Workers, 461 U.S. 757, 766, 103 S.Ct. 2177, 2183 (1983)). "The Court has made clear that any such public policy must be explicit, well defined, and dominant. It must be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." Id., 121 S.Ct. at 467 (internal quotation marks and citation omitted). We treat the inquiry into whether an arbitration award is "contrary to public policy" as requiring a determination of whether there is "a well defined and dominant public policy," and, if so, "whether the arbitrator's award, as reflected in his or her interpretation of the agreement, violate[s] the public policy." Exxon Shipping Co. v. Exxon Seamen's Union, 73 F.3d 1283, 1291–92 (3d Cir. 1996).

The second situation in which a reviewing court may vacate an arbitration award is when the court concludes that the arbitrator has ignored the plain language of the collective bargaining agreement. Eastern Associated, 531 U.S. at 62, 121 S.Ct. at 466 (citing United Paperworkers Int'l Union, AFL–CIO v. Misco, Inc., 484 U.S. 29, 38, 108 S.Ct. 364, 371 (1987)). " `But as long as[an honest] arbitrator is even arguably construing or applying the contract and acting withing the scope of his authority,' the fact that `a court is convinced he committed serious error does not suffice to overturn his decision.' " Id., 121 S.Ct. at 466 (quoting Misco, 484 U.S. at 38, 108 S.Ct. at 371). The language of the collective bargaining agreement at issue in this case provides:

> Employees covered by this Agreement shall be covered by Subchapter I of Chapter 81 of Title 5, and any amendments thereto, relating to compensation for work injuries. The Employer will promulgate appropriate

regulations which comply with applicable regulations of the Office of Workers' Compensation Programs and any amendments thereto.

App. at 63. The statutes referred to in the collective bargaining agreement include section 8128(b).

NALC seeks an order vacating the arbitration award contending that the arbitrator's award was against public policy and ignored the plain language of the collective bargaining agreement. But the arguments conflate because each rests on the contention that the arbitrator erred in rendering a decision that, contrary to section 8128(b), conflicted with OWCP's factual conclusions. Therefore, the controlling questions on this appeal are (1) whether NALC is correct that section 8128(b) required that OWCP's factual conclusions bind the arbitrator; and, if so, (2) whether the section 8128(b) requirement is "explicit, well defined, dominant" or clear enough so that we should hold that by not applying section 8128(b) the arbitrator ignored the plain language of the collective bargaining agreement. Inasmuch as we hold that section 8128(b) is not preclusive we do not reach the second question.

Section 8128 provides:

> (a) The Secretary of Labor may review an award for or against payment of compensation at any time on his own motion or on application. The Secretary, in accordance with the facts found on review, may–
>
> (1) end, decrease, or increase the compensation previously awarded; or
>
> (2) award compensation previously refused or discontinued.
>
> (b) The action of the Secretary of his designee in allowing or denying a payment under this subchapter is–
>
> (1) final and conclusive for all purposes and with respect to all questions of law and fact; and
>
> (2) not subject to review by another official of the United States or by a court by mandamus or otherwise.

The Secretary's designee is OWCP. The arguments here focus on the meaning of section 8128(b)(1), which states that an OWCP decision is "final and conclusive for all purposes and with respect to all questions of law and fact." NALC argues that we should read this language to mean that all of OWCP's factual and legal determinations are binding on all courts and tribunals adjudicating disputes predicated on the same set of facts as those OWCP considered. The Postal Service contends that we should read section 8128(b) to apply only to "the action of the Secretary . . . in allowing or denying a payment under this subchapter." Under this reading, "the Act simply reserves the Secretary the exclusive authority to make final determinations with respect to granting or denying payments, and such decisions cannot be challenged elsewhere." Br. at 8.

While we have not addressed the issue, the Court of Appeals for the Federal Circuit and a district court have adopted the Postal Service's interpretation that section 8128(b) only precludes subsequent courts and tribunals from challenging or contradicting OWCP's factual or legal determinations with respect to granting or denying payments under FECA. See Minor v. Merit Sys. Prot. Bd., 819 F.2d 280 (Fed. Cir. 1987); United States v. Carpentieri, 23 F. Supp. 2d 433 (S.D.N.Y 1988). Both of these courts held that in proceedings following OWCP determinations courts are bound only by the "Labor Department's decisions on the making or denying of compensation awards," and are not bound by the OWCP's factual conclusions. Minor, 819 F.2d at 283; see Carpentieri, 23 F. Supp.2d at 438.

Minor involved an appeal by a Postal Service employee from the Merit System Protection Board's ("MSPB") dismissal for lack of jurisdiction of her appeal from the Postal Service's denial of her request for restoration to her former position as a distribution clerk. Minor, claiming that she was injured at work, filed a claim for FECA benefits. OWCP initially awarded her benefits. The Postal Service then became suspicious of her claim, investigated the matter, and terminated her employment on the ground that she lied on her application for benefits. Her union

8

challenged the grounds for her dismissal and unsuccessfully invoked the applicable grievance procedures and then sought arbitration. The arbitrator analyzed the site of the accident and the testimony at the hearing and concluded that the accident could not have happened as Minor described. See Minor, 819 F.2d at 281. Consequently, he gave Minor the opportunity to resign or be removed for just cause. She did not resign and thus was removed. Id. Subsequently, OWCP reconsidered its compensation award and terminated Minor's FECA benefits. Minor, however, then appealed OWCP's decision to the Employees' Compensation Appeals Board, which overturned the OWCP decision terminating benefits and remanded the matter to OWCP for a de novo decision. OWCP then retroactively terminated Minor's benefits.

After the Employees' Compensation Appeals Board decision, Minor sought restoration to her position but her application was denied on the ground that she was removed for cause after filing a false claim. Id. at 282. Minor then appealed this denial to the MSPB which found that Minor had been removed for cause by reason of having filed a false claim and, therefore, that it did not have authority to order her restoration because the regulation on which she was relying to establish her entitlement to reinstatement applied only to employees whose employment had been suspended due to a "compensable injury." Minor then appealed to the Court of Appeals for the Federal Circuit.

In the court of appeals the issue was whether Minor was removed by reason of a compensable injury or for cause because the MSPB's jurisdiction was limited to situations in which the removal had been by reason of a compensable injury. The court noted that:

> The complexity arises from the formal ruling of the Employees' Compensation Appeals Board . . . that the escalator incident had occurred as Ms. Minor had described it. Thus there are two final determinations directly opposing each other — one made by the Employees' Compensation Appeals Board and the other by the arbitrator. Which is the dominant in this case?

. . . .

> [Minor] invokes the federal employees compensation
> statute (5 U.S.C. S 8128(b)) . . . . That provision
> obviously relates only to the Labor Department's
> decision on the making or denying of compensation
> awards. That realm is the Labor Department's
> authorized area, and S 8128(b) does not prevent an
> employing agency from deciding, in an authorized
> adverse action, that the employee had received a
> compensation award through making a false claim for
> which removal is the appropriate penalty. That is the
> sphere of the employing agency and of the M.S.P.B. or
> arbitrator on review of the adverse action.

Id. at 283.

While NALC attempts to distinguish Minor, we are
satisfied that its holding is applicable here, as the court of
appeals differentiated between compensation proceedings
and other proceedings in determining the effect of section
8128(b), holding it binding only in the former. In sum, there
is simply no escape from the conclusion that Minor adopted
the interpretation of section 8128(b) that the Postal Service
contends is correct.

In United States v. Carpentieri, 23 F. Supp. 2d 433, the
court reached a conclusion similar to that in Minor.
Carpentieri involved a civil action against a government
employee under the False Claims Act based on false
statements he made in his application for employment and
in his subsequent applications for FECA benefits.
Carpentieri moved to dismiss the complaint on the ground
that by reason of section 8128(b) the court could not hear
the case. Adopting essentially the same position as Minor,
the court concluded that the False Claims Act action could
proceed because the government did not seek a review of
the underlying decision of OWCP "that Mr. Carpentieri's
submission, if not fraudulent, establishes eligibility for
benefits." Id. at 435. Rather, the question was "whether or
not Mr. Carpentieri supplied information he knew to be
false to the federal government." Id. at 436. The court
acknowledged that "a finding that Mr. Carpentieri did in
fact falsify documents to obtain FECA benefits would be

10

philosophically incompatible with the ongoing payment of benefits to Mr. Carpentieri," but nevertheless concluded that it "would not constitute a judicial review of the OWCP determination." Id..

After careful consideration, we agree with Minor and Carpentieri, both of which we regard as well reasoned, and thus will affirm.2 In reaching our result we have taken note of the Postal Service's observation that:

> Federal employees may receive payments under [FECA] for injuries sustained in the performance of their duties. The determination of whether to grant or deny such payments is made by the Secretary of Labor, or his designee, and is non-adversarial in nature. 20 C.F.R. SS 10.110-18, 615-21.

Br. at 3 n.1. In its reply brief, NALC does not challenge this characterization which in any event is correct. See 20 C.F.R. S 10.0 (proceedings under the FECA are non-adversarial in nature). Of course, the characterization is consistent with FECA's primary purpose which, as we indicated in Lorenzetti v. United States, 710 F.2d 982, 984 (3d Cir. 1983), rev'd on other grounds, 467 U.S. 167, 104 S.Ct. 2284 (1984), is to create a compromise similar to that in workers' compensation laws, i.e., the employee has the right to receive immediate fixed benefits regardless of fault and without litigation but in turn loses the right to sue her employer, the government, for damages on account of work-related injuries. See also Miller v. United States Postal Serv., 26 M.S.P.R. 210, 212 (1985). We are convinced that it would be strange if a determination in a non-adversarial proceeding had a preclusive effect in an adversarial proceeding as "the general rule [is] that issue preclusion attaches only `[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment . . . .' " Arizona v. California, 530 U.S. 392, 414, 120 S.Ct. 2304, 2319 (2000). While we do not suggest that Congress could not make a ruling under section 8128(b) preclusive in the circumstances here, we hold that it did not do so.

_____

2. Significantly our result also is consistent with that the MSPB has reached. See Miller v. United States Postal Serv., 26 M.S.P.R. 210 (1985).

We also point out that NALC is taking a position that it later might regret if it prevails. Here it contends that under section 8128(b) "decisions by OWCP are final and conclusive for all purposes and with respect to all questions of law and fact" and that the arbitrator thus was obligated to respect OWCP's previous finding that Colatat injured herself while at work. It thus follows from NALC's position that in some circumstances if the OWCP rejected a claim, and the Postal Service then terminated the employee, the arbitrator would be required without regard for other information available to him to uphold the termination. Indeed, in some cases under NALC's position an arbitration proceeding regarding an employee's termination following an OWCP determination would be a mere formality with a preordained outcome. We cannot believe that Congress could have intended such a result. Instead of adopting NALC's position, we sensibly construe section 8128(b) and reach the result we do. See Government of Virgin Islands v. Berry, 604 F.2d 221, 225 (3d Cir. 1979).

We recognize that in the OWCP's latest decision with respect to Colatat's claim it determined that she did not demonstrate that her injury was work related and that it possibly could change its position again. Because we base our result on the ground that section 8128(b) did not oblige the arbitrator to follow the OWCP result, a change in outcome subsequent to this opinion in the FECA proceedings would not affect our disposition of this appeal.3

IV. CONCLUSION

For the foregoing reasons, the order of the district court entered December 29, 2000, will be affirmed.

_____

3. In view of our result we have no need to consider the possible application of the doctrine of functus officio in this case. That doctrine, although subject to exceptions, provides that once an arbitrator executes his award he does not have the power or authority to proceed further. See Teamsters Local 312 v. Matlack, Inc., 118 F.3d 985, 991 (3d Cir. 1997).

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

13