**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2941 and 15-3542
_____

BROCKWAY MOULD, INC., a Subsidiary of Ross International, Inc.
Appellant in No. 15-2941

v.

UNITED STEEL PAPER AND FORESTRY
RUBBER MANUFACTURING ENERGY
ALLIED INDUSTRIAL AND SERVICE
WORKERS INTERNATIONAL UNION;
SERVICE WORKERS INTERNATIONAL UNION
on behalf of its LOCAL 71
Appellants in No. 15-3542
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
District Court No. 2-13-cv-01589
District Judge: The Honorable David S. Cercone
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
July 11, 2016

Before: SMITH, JORDAN, and RENDELL, *Circuit Judges*

(Opinion Filed:  July 15, 2016)

―――――――――――――

# OPINION*

―――――――――――――

SMITH, *Circuit Judge.*

This appeal stems from a labor arbitration between Appellant Brockway Mould, Inc. ("Brockway") and Appellee United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union on behalf of its Local 71 ("Union"). The Union filed grievances against Brockway on behalf of fourteen of its members who were former employees of Brockway. The Union claimed that, under the parties' then-current collective bargaining agreement, Brockway owed the aggrieved employees certain pension benefits following the permanent closure of Brockway's glass-mold manufacturing plant, and that Brockway had refused to provide these benefits. Following the unsuccessful grievance process, and consistent with the parties' bargaining agreement, the dispute was submitted for binding arbitration. After the arbitrator issued an award in the Union's favor, Brockway brought an action in the District Court to vacate the award. The District Court denied Brockway's motion to vacate the award and granted the Union's motion to enforce the award. The court also

―――――――――――――

* This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

denied the Union's Motion for Specific Relief. For the reasons that follow, we will affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Ross International, Inc. ("Ross") entered into an asset purchase agreement ("purchase agreement") in January 1994 with Owens-Illinois, Inc. and Brockway Glass Container, Inc.[1] (collectively, "Owens") whereby Ross purchased from Owens a glass-mold plant called the Brockway Mould plant.[2] As part of the purchase agreement, Brockway did not purchase the assets from the Owens pension plan. In conjunction with the purchase agreement, Brockway and Owens entered into a Pension Agreement governing each parties' obligations vis-à-vis the pension benefits of the former Owens employees who became Brockway employees when the deal was consummated ("transferred employees"). Under the Pension Agreement, Owens agreed that it would be responsible for paying that portion of the transferred employees' pension benefits attributable to their years of service with Owens prior to their transfer to Brockway. For its part, Brockway agreed that the transferred employees' years of employment with Owens would count toward their "eligibility for and accrual of pension benefits" under the

---

[1] Brockway Glass Container, Inc. is a corporate entity unrelated to Appellant Brockway.

[2] Brockway is a subsidiary of Ross and the operator of the plant from 1994 until its closing in 2012. Hereinafter, we will refer to Ross and Brockway as "Brockway."

3

Brockway pension plan. Nevertheless, the Pension Agreement also made clear that the amount payable to the transferred employees under the Brockway pension plan "shall be offset on a dollar-for-dollar basis by the pension benefits properly payable" to the transferred employees under the Owens pension plan, "or any successor plan thereto."[3] App. 60.

Shortly after Brockway assumed control of the plant, Owens amended its pension plan to eliminate enhanced pension benefits in the event of a permanent plant closure. Then, in 1996, Brockway and the Union entered into a new collective bargaining agreement ("CBA").[4] In Article 18 of the CBA, which deals with pensions, Brockway agreed to provide such a plant-closure benefit:

> When [Brockway] elects to close a plant . . . permanently, an employee under age sixty (60) whose employment is terminated as a result of such closing . . . may retire and receive a pension benefit . . . provided he has thirty (30) or more full years of credited service at the date of such closing, or . . . is at least age fifty-five with at least ten (10) or more full years of credited service at the date of such closing . . . .

---

[3] Take, for example, a transferred employee who is eligible under the Brockway pension plan for a benefit of $1,500 per month based on his combined years of eligible employment, first at Owens, then at Brockway. If, under the Owens pension plan, that employee would be eligible for a benefit of $500 per month, then, according to the Pension Agreement between Brockway and Owens, Brockway was on the hook for only $1,000 per month.

[4] Although the 1996 CBA expired in 1999, subsequent collective bargaining agreements between Brockway and the Union are, at least for purposes of this dispute, identical to the 1996 CBA. Therefore, we will henceforth refer to these agreements as "the CBA."

4

App. 103.

As part of the negotiations leading up to the CBA, Brockway drafted a letter ("Brockway letter" or "letter") that was ultimately incorporated into the CBA as an exhibit. The letter "attempted to set forth . . . a very basic clarification" of the Pension Agreement, discussed above, between Owens and Brockway, in order to "hel[p the Union] understand the operation of Article 18, Pensions since the sale of the [plant]." App. 120; *see also* App. 181 (2011 CBA). In clarifying "the operation of Article 18" of the CBA, the letter explained that transferred employees "received credited service under the [Owens pension plan] through the sale date of January 3, 1994," which is the closing date of the purchase agreement between Brockway and Owens, and that thereafter Brockway "became responsible for any future credited service to these employees." App. 120. The letter then noted that "the credited service these [transferred] employees earned under the [Owens pension plan] is credited under the [Brockway pension plan], provided it has not been canceled by a break in service." App. 120. However, "no service would be credited and no benefits would be computed on either overlapping or duplicative periods of service. The ultimate pension benefit to be provided to these employees shall come in part from the [Owens pension plan] and in part from the [Brockway pension plan]." App. 120-21.

Brockway permanently closed the plant in October 2012. Following the closure, it denied the applications for pension benefits of fourteen transferred employees because, even though each of them had at least thirty years of credited service between Owens and Brockway, none had reached the age of fifty-five. The Union's grievances on behalf of the employees were unsuccessful, so the matter was referred for arbitration. Brockway argued during the arbitration hearing that eligibility for the plant-shutdown benefit was conditioned on the employees' being at least fifty-five years old upon the date of the plant closure. Brockway also argued that, even if the employees were entitled to the plant-shutdown benefit, under the offset provision of the Pension Agreement, Brockway was obligated to pay for only those pension benefits accruing since the sale of the plant to Brockway in 1994.

The arbitrator, Richard W. Dissen, rejected both of Brockway's contentions. First, he concluded that under the plain language of the plant-shutdown provision in the CBA, employees with thirty or more years of credited service are entitled to the benefit, regardless of age. And because each of the aggrieved employees had accumulated at least thirty years of credited service prior to the shutdown, the arbitrator determined that these employees qualified for the benefit. Second, he concluded that Brockway was liable for the entire plant-shutdown pension benefit. In the arbitrator's view, the agreement governing the relationship between

6

Brockway and the Union was the CBA, not the Pension Agreement, and the CBA did not contain any provision limiting Brockway's obligation to only that portion of pension benefits accrued during employment with Brockway. Therefore, Brockway was obligated to cover the full benefit.

Brockway filed suit in the District Court seeking to vacate that portion of the arbitrator's decision and award holding Brockway liable for the full amount of the aggrieved employees' pension benefit.[5] The Union also filed a "Motion for Specific Relief" under Federal Rule of Civil Procedure 60(a) (the "Rule 60(a) Motion"), which sought an order from the court specifically commanding Brockway to honor its pension obligations as established by the arbitrator's award. After restating Brockway's arguments, the District Court concluded that the arbitrator's "decision unquestionably 'draws its essence' from the CBA," App. 19, and therefore denied Brockway's motion to vacate and granted the Union's motion to enforce the arbitration award. However, the court denied the Union's Rule 60(a) Motion because the court's earlier order – denying Brockway's motion to vacate and granting the Union's motion to enforce the award – already provided the Union the relief it was seeking. Both parties then filed timely notices of appeal.

## II. Jurisdiction and Standard of Review

The District Court had jurisdiction pursuant to 29 U.S.C. § 185 and 9 U.S.C. § 10. We exercise jurisdiction under 9 U.S.C. § 16(a)(1)(D) and 28 U.S.C. § 1291. "When reviewing a district court's denial of a motion to vacate an arbitration award, we review its legal conclusions de novo and its factual findings for clear error." *Hamilton Park Health Care Ctr. Ltd. v. 1199 SEIU United Healthcare Workers E.*, 817 F.3d 857, 861 (3d Cir. 2016) (quotation marks and citation omitted). We review the District Court's decision to deny the Union's Rule 60(a) Motion for an abuse of discretion. *Pfizer Inc. v. Uprichard*, 422 F.3d 124, 129 (3d Cir. 2005).

## III. ANALYSIS

Brockway contends that the arbitrator "exceeded [his] powers," 9 U.S.C. § 10(a)(4), by issuing an award requiring Brockway to pay the full amount of the aggrieved employees' pension benefits instead of allowing Brockway to offset the amount owed based on Owens' obligations under the Pension Agreement. The Union, for its part, argues that it was error for the District Court to deny the Union's Rule 60(a) Motion. We will discuss each issue in turn.

## A

---

[5] Brockway initially also sought to vacate the arbitrator's decision concerning the employees' eligibility *vel non* for the plant-shutdown benefit, but later withdrew this issue from the District Court's consideration.

"There is a strong presumption under the Federal Arbitration Act in favor of enforcing arbitration awards." *Brentwood Med. Assocs. v. United Mine Workers of Am.*, 396 F.3d 237, 241 (3d Cir. 2005) (internal citation omitted). In reviewing such awards, we apply an "extremely deferential standard, the application of which is generally to affirm easily the arbitration award." *Hamilton Park*, 817 F.3d at 861 (internal quotation marks and citation omitted). We must answer the question "whether the arbitrator's conclusion is supported, *in any way*, by a rational interpretation of the [CBA]," *Brentwood Med. Assocs.*, 396 F.3d at 241 (emphasis added), or, put another way, whether the award "draws its essence" from the CBA, *Nat'l Ass'n of Letter Carriers, AFL-CIO v. U.S.P.S.*, 272 F.3d 182, 185 (3d Cir. 2001). In determining whether the award is rationally based on an interpretation of the CBA, we must "resist the urge to conduct *de novo* review of the award on the merits." *Brentwood Med. Assocs.*, 396 F.3d at 241.

Brockway argues that the arbitrator "rewrote the parties' agreement" when he concluded that Brockway was obligated to pay the aggrieved employees their full pension under the plant-shutdown provision. Specifically, Brockway claims that the parties' CBA contained "no provision . . . that requires Brockway to give credit for past service the employees had with Owens in the calculation of its

9

pension obligation."[6]   Appellant's Br. 22.  Indeed, according to Brockway, the Brockway letter plainly absolves Brockway of any obligation to cover the portion of plant-shutdown benefits attributable to the aggrieved employees' time at Owens. *See* App. 120-21 ("The ultimate pension benefit to be provided to these employees shall come in part from the [Owens pension plan] and in part from the [Brockway pension plan].").

We will uphold the arbitrator's award as it is clear that he drew the essence of his award from the parties' CBA.  He first noted that under the CBA Brockway was required to pay pension benefits, including the plant-shutdown benefit, based on the employees' years of credited service.  The arbitrator then pointed to Brockway's agreement in the CBA to count the transferred employees' years of service at Owens in determining eligibility for other pension benefits (such as vacation entitlements and severance payments), and from this he inferred Brockway's obligation to count the employees' time at Owens in determining their eligibility for the plant-shutdown benefit.[7]  The arbitrator also fully appreciated

---

[6] This is not to say that Brockway was under no obligation to credit the employees' service at Owens in determining eligibility *vel non* for pension benefits under the Brockway pension plan.  Indeed, Brockway concedes this point on appeal, as it appears to have done before the arbitrator as well.

[7] In concluding that Brockway had agreed to count employees' service at Owens in determining eligibility for pension benefits under the Brockway pension plan, the arbitrator appears to have ignored a clearer piece of evidence – the Brockway letter, which was incorporated into the CBA.  *See* App. 120 ("[T]he credited

10

that in relying on the language in the Brockway letter stating that part of each transferred employee's pension benefits would be paid from the Owens pension plan, Brockway was really relying on the Pension Agreement and its offset provision.[8]  And inasmuch as the Pension Agreement was not part of the CBA – but was instead between Brockway and Owens – the arbitrator concluded that the Pension Agreement did not bind the Union, and that Brockway could not avoid

service these [transferred employees] earned under the [Owens pension plan] is credited under the [Brockway pension plan] . . . .").  Nevertheless, a much stronger piece of evidence is found in the nature of Brockway's argument before the arbitrator that the aggrieved employees were not entitled to the plant-shutdown benefit in the first place: Brockway never suggested that these employees simply had not accumulated the requisite thirty years of credited service, arguing instead that they were disqualified because they were not yet fifty-five years old.  If Brockway actually believed (and there is no indication that it did) that these employees' years at Owens did not count towards the credited service requirement, it would have been an obvious argument to make since, at the time of the plant's closure, these employees had been working for Brockway for less than twenty years.

[8] Although the Union generally contests the relevance of the terms of the Pension Agreement to this dispute (given that the Pension Agreement was not part of the CBA), it argues that, even under the Pension Agreement, Brockway is not entitled to an offset.  As the Union notes, the offset provision in the Pension Agreement allows Brockway to reduce the amount of pension benefits it provides a given transferred employee by the amount "properly payable" under the Owens pension plan.  Because the Owens pension plan no longer provides for any plant-shutdown benefits, the argument goes, no amount is "properly payable" under that plan, so Brockway would not get any offset anyway.  *See also* App. 60 (offset provision specifying that the Owens pension plan under which "properly payable" pension benefits are to be determined includes "any successor plan thereto").  Nevertheless, because the arbitrator did not appear to rely on this reasoning to support his award, neither do we rely on it in upholding that award.

11

satisfying its obligations based solely on the nondescript Brockway letter. It is of no moment whether we think the arbitrator's interpretation of the CBA (including the Brockway letter) was correct; Brockway got what it bargained for, "a procedure in which an arbitrator would interpret the agreement." *Nat'l Ass'n of Letter Carriers*, 272 F.3d at 185. That is enough for us.

## B

The Union's Rule 60(a) Motion asked the District Court to "expressly" issue "an order directing the Company" to comply with the arbitrator's award requiring Brockway "to provide any unpaid pension benefits and to reimburse grievants for out-of-pocket healthcare expenses." Appellee's Br. 26. According to the Union, by denying this motion, "the District Court risks allowing the Company to avoid remedying its unlawful non-compliance with the arbitration award." *Id.* at 27.

Rule 60(a) of the Federal Rules of Civil Procedure provides, in relevant part, that "[t]he court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, [or] order." Fed. R. Civ. P. 60(a). In denying the motion, the District Court explained that the relief the Union was seeking was already "set forth" in the arbitration award that the court had already ordered enforced. The court obviously determined that there was no mistake in the judgment, and we cannot conclude that its determination was an abuse of discretion.

12

## IV. CONCLUSION

We will affirm the District Court's order denying Brockway's motion to vacate the arbitration award and granting the Union's motion to enforce the award, as well as the order denying the Union's Rule 60(a) Motion.