801 F.2d 578
 JANUS FILMS, INC., Plaintiff-Appellee,
v.
Herbert MILLER d.b.a. Cable Films, Defendant-Appellant,
Delta Communications, Ltd., a/k/a Delta Communications,
Inc., Ann Baily, Executrix of the Estate of Mel
Baily, Defendants.
 No. 1024, Docket 85-7707.
 United States Court of Appeals,
Second Circuit.
 Argued March 31, 1986.
Decided Sept. 15, 1986.
 
 Stuart A. White, Portland, Me., for defendants-appellants.
 Jeffrey D. Ullman, New York City, N.Y. (Ullman & Holtzman, New York City, on brief), for plaintiff-appellee.
 Before OAKES, NEWMAN, and WINTER, Circuit Judges.
 JON O. NEWMAN, Circuit Judge:
 
 
 1
 This appeal presents what appear to be novel issues concerning the entry of judgment in litigation ended by a settlement. Among the questions raised is whether the judgment must reflect the fact that the settlement includes a confidential agreement between the parties that the judgment may be satisfied by payment of a lesser sum than the amount of the judgment. The appeal is brought by Herbert Miller d.b.a. Cable Films from a judgment of the District Court for the Southern District of New York (Robert J. Ward, Judge) in favor of plaintiff-appellee Janus Films, Inc. ("Janus"). For reasons that follow, we vacate the judgment and remand for entry of a revised judgment.
 
 Facts
 
 2
 Janus sued Miller for copyright infringement. Janus alleged that it had acquired exclusive licenses to the copyrights in five literary works from which popular movies have been made. The films are "The Third Man," "The Thirty-Nine Steps," "The Lady Vanishes," "Bulldog Drummond Comes Back," and "Bulldog Drummond's Peril." The films are in the public domain, since the copyrights in them expired and were not renewed. The copyrights in the stories, however, were renewed and remain valid. Janus alleged that the movies are "derivative works," 17 U.S.C. Secs. 101, 103 (1982), and that, as the exclusive licensee of the copyrights in the underlying stories, it has, in effect, the exclusive right to authorize the distribution, performance, and display of the movies. See Filmvideo Releasing Corp. v. Hastings, 668 F.2d 91 (2d Cir.1981); G. Ricordi & Co. v. Paramount Pictures, Inc., 189 F.2d 469 (2d Cir.), cert. denied, 342 U.S. 849, 72 S.Ct. 77, 96 L.Ed. 641 (1951). Janus further alleged that Miller was distributing videocassettes of the films, thereby infringing Janus's rights.
 
 
 3
 Janus waived its claim for actual damages and elected to seek statutory damages. See 17 U.S.C. Sec. 504(c). Judge Ward thereupon granted Janus's motion to strike Miller's jury demand. See Oboler v. Goldin, 714 F.2d 211 (2d Cir.1983). A bench trial began on April 29, 1985. On the first day of the trial Janus introduced 85 exhibits to establish the basis for its claim of the exclusive right to prevent the unauthorized distribution of the five films. On the morning of the trial's second day counsel for the parties entered into settlement discussions. These resulted in an agreement reported in open court later that day. The settlement agreement, as stated by counsel for Janus, contained four elements: the defendant concedes liability "under the complaint"; judgment may be entered for statutory damages, attorney's fees, and costs in the total amount of $100,000 and with a permanent injunction that includes an obligation "for the turnover and/or destruction of all infringing copies of the work in defendant's possession"; the parties have entered into a separate, confidential agreement, to be placed under seal, regarding "the terms and conditions of collection" of the judgment; and the parties have made a separate agreement obliging Miller to cease distribution of other, unspecified films.
 
 
 4
 Judge Ward then interrogated the president of Janus, Saul J. Turell, and Miller under oath to confirm their understanding and acceptance of the terms of the settlement. Both acknowledged that the settlement had been correctly reported. Miller explicitly acknowledged that he was conceding liability "under the complaint." In open court Turell elaborated slightly on the separate agreement concerning collection, acknowledging that it provided for acceptance of "a lesser amount" in full satisfaction of the $100,000 judgment. In the sealed portion of the transcript Miller confirmed the details of the separate agreement, stating that it provided for payment of a sum considerably less than $100,000 in installments over an extended period of time. Judge Ward then stated that he would await the submission of a judgment.
 
 
 5
 One week later an article appeared in Variety, reporting facts about the settlement available from the public record of the court proceedings. The article referred to the $100,000 amount but made no mention of the agreement to accept payment of a "lesser" amount in full satisfaction. The article also made no mention of a settlement, stating, with some justification, that a $100,000 judgment had been "won" by Janus Films. Miller sent a copy of the article to Judge Ward, complained that it reported that a judgment "has been won," and pointed out the absence of a "formal, written agreement signed with respect to the arrangements discussed for settlement in your court room." In subsequent correspondence to the Court, Miller endeavored to challenge the legal proposition that a holder of a copyright in an underlying work can prevent unauthorized distribution of a derivative work that has entered the public domain. He suggested that "perhaps it is time to set aside the pending settlement."
 
 
 6
 A few days later counsel for Janus submitted to the Court and opposing counsel a proposed judgment and noticed it for settlement on June 21. Thereafter Miller filed a notice of his dismissal of his counsel and later submitted pro se a motion to set aside the settlement and resume the trial. On June 21, Judge Ward denied the motion, noting that the settlement had been entered into voluntarily and that Miller had acknowledged his understanding of and agreement with its terms under oath. The same day Judge Ward entered the judgment in the form proposed by Janus.
 
 
 7
 The judgment initially recites the procedural steps leading up to its entry. Among the recitals is the following:
 
 
 8
 and the Court having determined, upon the suggestion of the parties, that plaintiff should have judgment against defendant for a permanent injunction pursuant to 17 U.S.C. sec. 502, and for statutory damages, attorneys' fees and costs pursuant to 17 U.S.C. sec. 504 in the total sum of $100,000, ...
 
 
 9
 The decretal provisions of the judgment (1) declare that the plaintiff has valid and enforceable exclusive rights in the five underlying literary works, including the right to authorize the distribution, performance, and display of the five films, (2) award $100,000 to the plaintiff, and (3) subject the defendant to two injunctions. The first prohibits Miller from distributing prints or videotapes of the five films or otherwise infringing plaintiff's exclusive rights. The second requires Miller to recall prints and videotapes of the five films from all persons who have possession of them by virtue of Miller's acts; Miller is also required to turn over to plaintiff's counsel all recalled articles received from third parties and all infringing articles still in Miller's possession.
 
 
 10
 On appeal, Miller, now represented by new counsel, seeks to have the judgment set aside on several grounds. He contends that the judgment is "inaccurate and incomplete," Brief for Appellant at 11, in that the $100,000 sum is not the amount he agreed to pay and the plaintiff agreed to accept, that the plaintiff's release to the press of what he calls an inaccurate version of the settlement justifies upsetting the settlement, that the declaratory provisions of the judgment "purport to be findings of fact and conclusions of law of the court upon contested issues of copyright validity and infringement which were not litigated," id. at 12, and that part of the injunctive relief exceeds the terms of the settlement.
 
 Discussion
 
 11
 At the outset, it will be useful to clarify the nature of the procedure that ended this litigation. In Miller's view, there was an agreement that contemplated the entry of a "consent judgment." Janus disputes this characterization. Its view of the matter is reflected in the language of the draft judgment it submitted to Judge Ward, reciting that the judge had "determined" that the plaintiff should have judgment against the defendant for a permanent injunction and $100,000. Janus thereby secured a judgment that can plausibly be read to mean that the judge, acting on the basis of the exhibits and the defendant's concession of liability, made his own determination that the plaintiff was entitled to an injunction and an award of $100,000. Resolving the dispute reflected by these differing views requires a review of the various means by which a lawsuit may be ended and the role of a trial judge in each circumstance.
 
 
 12
 Lawsuits may terminate either by adjudication or by agreement of the parties. In the case of an adjudication, the judge determines all aspects of the relief to be awarded and enters what has been called an "adjudicated judgment," Pettway v. American Cast Iron Pipe Co., 576 F.2d 1157, 1175 (5th Cir.1978), cert. denied, 439 U.S. 1115, 99 S.Ct. 1020, 59 L.Ed.2d 74 (1979). The wording of such a judgment is determined by the judge, who may draft it, accept the draft proposed by the winning party, or adopt portions of draft language proposed by any of the parties.
 
 
 13
 Lawsuits ended by agreement may either be dismissed by stipulation, Fed.R.Civ.P. 41(a)(1)(ii), or may culminate in a judgment. If dismissed by stipulation, the judge normally plays no role whatever, standing "indifferent" to the terms the parties have agreed to. See Heddendorf v. Goldfine, 167 F.Supp. 915, 926 (D.Mass.1958) (Wyzanski, J.). With some stipulated dismissals, such as class actions, court approval is required, Fed.R.Civ.P. 23(e), and the judge must determine whether the settlement is fair, adequate, and reasonable, the same standard applicable to a class action consent judgment, see Weinberger v. Kendrick, 698 F.2d 61, 73 (2d Cir.1982), cert. denied, 464 U.S. 818, 104 S.Ct. 77, 78 L.Ed.2d 89 (1983).
 
 
 14
 Where a settled lawsuit results in a judgment, the court enters either a consent judgment or what might be called a "settlement judgment." With a true "consent judgment" all of the relief to be provided by the judgment and all of the wording to effectuate that relief is agreed to by the parties. The court makes no determination of the merits of the controversy or of the relief to be awarded. With a "settlement judgment" the parties have agreed on the components of a judgment, including the basic aspects of relief, but have not agreed on all the details or the wording of the judgment. The components of the agreement are usually reported to the court on the record. As with a consent judgment, the judge makes no determination of the merits of the controversy. With respect to relief, however, the judge's role in a settlement judgment is slightly broader. Since the parties have agreed only upon the basic aspect of relief, the judge is obliged to determine the detailed terms of the relief and the wording of the judgment. In determining the details of relief, the judge may not award whatever relief would have been appropriate after an adjudication on the merits, but only those precise forms of relief that are either agreed to by the parties, see In re Air Crash Disaster, 687 F.2d 626, 629 (2d Cir.1982) (district court may not alter terms of settlement agreement), or fairly implied by their agreement, see SEC v. Dennett, 429 F.2d 1303 (10th Cir.1970) (consent to entry of final judgment in action seeking injunction permits entry of detailed injunction). In determining the wording of a settlement judgment, the judge proceeds, as with an adjudicated judgment, to draft language, adopt the proposal of the party that effectively "won," or adopt portions of draft language proposed by any of the parties.
 
 
 15
 In deciding whether to approve agreements calling for entry of either a consent judgment or a settlement judgment, a court normally has only a limited role so long as the dispute affects only private interests. See United States v. City of Miami, 614 F.2d 1322, 1330 (5th Cir.1980). Though the judge does not "merely sign on the line," United States v. City of Miami, 664 F.2d 435, 440 (5th Cir.1981), he or she normally makes only the minimal determination of whether the agreement is appropriate to be accorded the status of a judicially enforceable decree. The court has a larger role, however, where a consent judgment or a settlement judgment resolves class actions, shareholder derivative suits, bankruptcy claims, antitrust suits brought by the United States, 15 U.S.C. Sec. 16(e) (1982), and any suits "affecting the public interest," Adams v. Bell, 711 F.2d 161, 170 n. 40 (D.C.Cir.1983) (in banc) (collecting cases), cert. denied, 465 U.S. 1021, 104 S.Ct. 1272, 79 L.Ed.2d 678 (1984). In such cases, the court must be satisfied of the fairness of the settlement. In some situations where the parties' agreement covers only part of the dispute, the court goes even further and adjudicates on the merits the portion that has been specifically left for its determination. See, e.g., High v. Braniff Airways, Inc., 592 F.2d 1330, 1334-35 (5th Cir.1979); Pettway v. American Cast Iron Pipe Co., supra, 576 F.2d at 1168-75.
 
 
 16
 Agreements that end lawsuits are contracts, sometimes enforceable in a subsequent suit, but in many situations enforceable by entry of a judgment in the original suit. A court's authority to enforce a settlement by entry of judgment in the underlying action is especially clear where the settlement is reported to the court during the course of a trial or other significant courtroom proceedings. See Meetings & Expositions, Inc. v. Tandy Corporation, 490 F.2d 714, 717 (2d Cir.1974) (per curiam); see also Ozyagcilar v. Davis, 701 F.2d 306, 308 (4th Cir.1983); Dacanay v. Mendoza, 573 F.2d 1075, 1078 (9th Cir.1978).[1] Even if the settlement agreement does not include a completely drafted consent judgment, a court is not obliged to place a trial on hold, to be resumed if the parties fail to agree on the precise wording of a judgment. Due regard for the proper use of judicial resources requires that a trial judge proceed with entry of a settlement judgment after affording the parties an opportunity to be heard as to the precise content and wording of the judgment, rather than resume the trial and precipitate an additional lawsuit for breach of a settlement agreement. This authority should normally be exercised whenever settlements are announced in the midst of a trial. Though a bench trial could be resumed with less inconvenience than a jury trial, the authority applies to both forms of trial. With these matters understood, we consider first the nature of the procedure that ended the instant lawsuit and then the appellant's specific challenges to the judgment.
 
 
 17
 The judgment entered by Judge Ward in this case was not, as Miller contends, a consent judgment. The parties had not agreed upon its precise terms. The wording was proposed by the plaintiff and ultimately adopted by the District Court, but without agreement of the defendant. Nor was the judgment an adjudicated judgment, as Janus contends. Though Miller conceded liability, his was not an unqualified concession upon which a court may rely for all purposes in the adjudication of remaining issues in the suit, see e.g., Allied International American Eagle Trading Corp. v. S.S. "Yang Ming," 672 F.2d 1055, 1056 (2d Cir.1982) (trial on damages after liability conceded). Miller conceded liability only as part of an agreement that included other provisions of the settlement. He was not making a concession of liability that would have permitted the District Court to enter any relief to which the plaintiff might prove its entitlement. His concession was limited to a judgment for $100,000 and a permanent injunction, the terms of which, unfortunately, were not spelled out in the settlement agreement. That agreement empowered the District Court to enter a settlement judgment, implementing but not expanding upon the parties' settlement agreement.
 
 
 18
 Miller contends that he was entitled to preclude the entry of judgment by reneging on the settlement agreement reached during the trial. Judge Ward correctly determined that no basis had been shown for refusing to enforce the settlement by entry of judgment. Plainly Miller could not walk away from the settlement simply because he changed his mind. He had heard its terms set forth by counsel for Janus in open court and had acknowledged his understanding of and agreement to the settlement when questioned under oath by Judge Ward.
 
 
 19
 The publication of the article in Variety, for which Janus does not disclaim responsibility, was not a ground for withholding entry of judgment. Miller points to the practice of the district courts in the Southern District to include in consent judgments in patent and copyright cases a clause stating: "This decree may not be cited as an adjudication of contested issues, nor be used for advertising purposes." See Wallace Clark & Co. v. Acheson Industries, Inc., 394 F.Supp. 393, 395 n. 2 (S.D.N.Y.1975), aff'd, 532 F.2d 846 (2d Cir.), cert. denied, 425 U.S. 976, 96 S.Ct. 2177, 48 L.Ed.2d 800 (1976). Even if such a clause would have been appropriate for inclusion in the judgment in this case, the fact is that it was not included, nor was any statement limiting publicity made in connection with the settlement agreement. Janus was free to disclose to Variety the facts that were placed on the record in open court. Though the Variety article, perhaps reflecting the account furnished by Janus, omitted the significant fact that the agreement included a provision for payment of the judgment by a "lesser" sum, this omission gave Miller no basis to resist entry of judgment.
 
 
 20
 Miller also challenges the content of the judgment entered by the District Court. He first contends that the judgment is inaccurate in stating the total sum to be paid as $100,000. This point is not well taken. The settlement agreement explicitly called for a judgment that included a provision for payment of $100,000. The fact that the settlement also included a side agreement whereby the judgment could be satisfied by payment of a lesser sum did not entitle Miller to have the judgment entered for that lesser sum. If Miller abides by the terms of the side agreement, he is entitled to obtain from the plaintiff a satisfaction of judgment. If the plaintiff, in breach of the side agreement, attempts to collect the face amount of the judgment while Miller is paying the lesser sum in the installments called for by the agreement, Miller would have a claim for breach of contract. But he has no complaint that the judgment specified $100,000. Indeed, if Miller fails to make the scheduled payments for the lesser sum, as called for in the side agreement, Janus would be free to execute on the judgment and collect the full $100,000.
 
 
 21
 Of more substance is Miller's point that the judgment is inaccurate in its omission of his entitlement to satisfy it by payment of a lesser sum. Viewed solely as an issue affecting the parties, this point lacks merit. Their agreement explicitly provided that the terms of the side agreement would be placed under seal, and the settlement contained no requirement that the judgment would reflect even the fact of a side agreement to accept a "lesser" sum.
 
 
 22
 However, the omission of any reference to the side agreement raises an issue of concern to the administration of justice. This issue requires some accommodation between the public interest in full disclosure of the true effect of judgments and the public interest in promoting settlement of lawsuits. It should not take a "Truth in Judgments" statute to make sure that courts guard against judgments that may be used to mislead the public. Janus obviously wanted the judgment to reflect a substantial sum so that other actual or potential infringers would be deterred. The deterrent effect might be significantly diminished if it were disclosed just how much "lesser" is the sum Janus agreed to accept in full satisfaction of the judgment. In other contexts the lack of any reference even to the existence of a side agreement would be called a material omission. On the other hand, courts also have a responsibility to promote settlements, and a rigid requirement that parties make full disclosure of the terms of all side agreements that accompany the entry of a judgment might well prevent the consummation of some settlements. Surprisingly, this disclosure issue appears not to have been considered in any reported decision.
 
 
 23
 Our solution distinguishes between a judgment that concerns only the parties to the lawsuit being settled and a judgment likely to be of concern to others. The former, which might be called a "private judgment," is illustrated by a judgment that resolves the claims of all parties to a dispute involving a tort or a breach of contract. The latter, which might be called a "public judgment," is illustrated by the pending case, where a judgment resolves a dispute concerning a copyright that may be enforced against other members of the public besides the defendant in this litigation. We need not determine whether in the case of a "private" judgment the parties must disclose any side agreement they may make for satisfaction of the judgment on lesser terms. With a public judgment, however, since there is always the distinct risk that either party may seek to induce others to settle similar disputes on terms exactly like or at least similar to the terms of the judgment, we hold such disclosure to be necessary. In this case, for example, one may expect Janus not to rely on the Variety article but to bring directly to the attention of anyone else who distributes works alleged to infringe its copyrights the fact that it has secured a judgment obliging Miller to pay $100,000. Notification of the terms of that judgment will be seriously misleading if the judgment does not reflect the complete provisions of Miller's obligation. If the parties to a dispute involving a copyright or other interests likely to be asserted against other members of the public are reluctant to disclose the terms of their agreement for satisfaction of the judgment agreed to be entered, they remain free to forgo entry of a judgment and settle their litigation by a withdrawal of action, keeping confidential all aspects of their settlement. They may not, however, secure a judicial imprimatur for an obligation that the parties have agreed means less than its terms state.
 
 
 24
 Language to reflect the facts of a side agreement concerning satisfaction of a judgment must not alter the terms of the decretal provisions of the judgment. Those terms must be clear enough to support process of execution. 49 C.J.S. Judgments Secs. 72-73 (1947). The judgment should not state, for example, that the plaintiff shall recover $100,000 or a lesser sum in the event that the defendant abides by the terms of a sealed side agreement concerning collection. Such a contingency has no place in the operative provisions of a judgment. Where the parties to a public judgment have agreed that the judgment may be satisfied on less burdensome terms, those terms should be set forth in the recitals that precede the operative provisions. In this case, the recital paragraph should therefore be revised to include the terms of the parties' side agreement for satisfaction of the $100,000 obligation. Alternatively, if the parties agree to forgo entry of a judgment, they should be afforded an opportunity to stipulate for the withdrawal of the action.
 
 
 25
 The wording of the judgment concerning the District Court's role in the litigation also requires some modification. The recital paragraph states that the Court has "determined, upon the suggestion of the parties, that plaintiff should have judgment against defendant" for an injunction and for $100,000. This version of the events is inaccurate. The parties did more than make a "suggestion"; they agreed upon the basic components of the judgment. And the District Court did less than "determine" that the plaintiff should have an injunction and $100,000; it decided only that these agreed upon components of the judgment were entitled to be approved. In addition, since the parties did not submit an agreed upon consent judgment, the District Court had to determine the details and wording of a judgment appropriate to carry out the terms of the settlement agreement. In doing so, however, it did not "determine," as the judgment now recites, that the plaintiff should have a judgment for an injunction and for $100,000. These components of the judgment had been agreed to by the parties. The recital paragraph must be revised by deleting the phrase "determined, upon the suggestion of the parties," and substituting the phrase "approved the parties' agreement."
 
 
 26
 Finally, the scope of the injunctive relief must be slightly limited. The settlement agreement called generally for a permanent injunction, without further elaboration. This agreement permitted the District Court to enter an injunction containing language necessary to effectuate the agreement. Once Miller conceded liability for infringement and accepted issuance of an injunction, the District Court was clearly entitled to enjoin him from distributing the infringing films or otherwise infringing plaintiff's exclusive rights, as provided in p 6 of the judgment, and to require him to turn over to plaintiff's counsel all infringing articles still in his possession, as provided in p 7 of the judgment. However, p 7 also requires Miller to recall and turn over copies of the infringing films from all persons who have possession of them by virtue of Miller's conduct. Though this might have been a reasonable remedy to include in an adjudicated judgment, it goes beyond what Miller subjected himself to by agreeing to the settlement. If Janus wanted Miller to recall infringing copies of the films from his distributees, in addition to ceasing distribution and paying $100,000, it should have negotiated such an obligation during the settlement. Just as Janus could not obtain a judgment for more than $100,000, even if it could prove entitlement to statutory penalties, fees, and costs of a greater amount, it cannot secure an injunction for any relief beyond what the agreement states or fairly implies. The recall provision must be deleted.[2]
 
 
 27
 Miller is not, however, entitled to deletion of the judgment's provisions that declare that Janus has enforceable, exclusive rights to the five stories and therefore has the right to prevent unauthorized distribution of the five films. These provisions simply elaborate the detail of what Miller was acknowledging by conceding his liability "under the complaint."
 
 
 28
 The judgment as entered is vacated, and the cause is remanded to the District Court for entry of a revised judgment consistent with this opinion. No costs.
 
 
 
 [1]
 In some states a judgment may not be entered upon the parties' agreement unless their consent continues until "the very moment the court undertakes to make the agreement the judgment of the court," Burnaman v. Heaton, 150 Tex. 333, 338, 240 S.W.2d 288, 291 (1951); see Rodriguez v. Rodriguez, 224 N.C. 275, 29 S.E.2d 901 (1944); Van Donselaar v. Van Donselaar, 249 Iowa 504, 87 N.W.2d 311 (1958); 47 Am.Jur.2d Judgments Sec. 1083 (1969), though it is not clear that even these jurisdictions would deny courts the power to enforce settlements announced on the record during the course of a trial. In other states, the court has broad discretion to enforce settlements, see, e.g., In re Cartmell's Estate, 120 Vt. 234, 138 A.2d 592 (1958)
 
 
 [2]
 Interestingly, Janus's complaint specifically sought to have a recall obligation imposed on two defendants no longer in the litigation and made no such demand with respect to the relief sought against Miller