UNITED STATES of America,
Plaintiff–Appellee,

v.

Alfred SFORZA and Josephine Sforza,
Defendants–Appellants.

Docket No. 02–6017.

United States Court of Appeals,
Second Circuit.

Argued: Dec. 2, 2002.

Decided: April 10, 2003.

Peter Tufo, Law Offices of Paul Kalker, Hauppauge, New York, NY, for Defendants–Appellants.

Ramon E. Reyes, Jr., Assistant United States Attorney, New York, New York (James B. Comey, United States Attorney for the Southern District of New York, Jeffrey S. Oestericher, Assistant United States Attorney, on the brief), for Plaintiff–Appellee.

Before: VAN GRAAFEILAND, CARDAMONE, and JACOBS, Circuit Judges.

JACOBS, Circuit Judge.

The United States brought suit under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729 *et seq.*, and federal common law, seeking recoupment of disability payments made to Alfred Sforza following a slip and fall. Alfred and Josephine Sforza appeal from a final judgment entered in the United States District Court for the Southern District of New York (Freeman, *M.J.*), enforcing a $200,000 settlement negotiated in open court. On appeal, the Sforzas (1) challenge subject matter jurisdiction on the ground that under 5 U.S.C. § 8128(b), benefit determinations under the Federal Employee Compensation Act ("FECA")

are "final and conclusive for all purposes," and "not subject to review by another official of the United States or by a court by mandamus or otherwise," and (2) contest the enforceability of the settlement.

We affirm.

## BACKGROUND

On January 18, 1982, Alfred Sforza submitted a claim for workers' compensation benefits pursuant to the FECA, 5 U.S.C. § 8101 *et seq.*, asserting that while on duty earlier that day as a letter carrier for the United States Postal Service ("USPS"), he had slipped on ice and suffered a back injury. Sforza's claim was submitted to the Office of Workers Compensation Programs ("OWCP"), which makes FECA eligibility determinations under the authority of the Secretary of the Department of Labor ("DOL"). *See* 5 U.S.C. § 8145(2). In October 1984, OWCP found Sforza eligible for FECA benefits, retroactive to March 1983.

Alfred Sforza maintained his eligibility for FECA benefits over the next fifteen years by regularly providing OWCP with sworn affirmations that he remained disabled and by submitting to physical examinations by DOL doctors. In his sworn affirmations (submitted on form CA–1032) and at the medical examinations, Sforza claimed that he could not sit, stand, walk, lie down, or drive for any significant period because of pain in his back and leg. Sforza also certified that he understood the requirement that he immediately report to OWCP any improvements in his physical condition. As early as 1990, DOL's doctors became skeptical, but Sforza continued to receive benefits, largely on the basis of his sworn representations.

The USPS (leaping into action) put Mr. Sforza under surveillance in November 1996. Over the next year, he was observed and videotaped while driving, shopping, mowing his lawn, and performing other yard work. In October 1997, after he had been videotaped on many occasions doing things he had sworn he could not do, he appeared with his wife Josephine Sforza in DOL's Manhattan office for a rehabilitation interview. At this interview, he made statements that were corroborated by his wife but belied by the videotapes.

In March 1998, Mr. Sforza was charged in a five-count indictment with making false statements in connection with claims for FECA benefits, in violation of 18 U.S.C. §§ 1001(a), 1920. He pleaded guilty in February 1999 to one count, admitting he made false statements at the October 1997 interview, and was sentenced to three years of probation (four months of which were to be spent in home detention), and was ordered to pay $19.289.50 to OWCP in restitution for benefits that had continued to be paid even after the October 1997 interview.

In February 2000, the United States commenced this civil suit against the Sforzas, claiming that they had conspired to submit false claims as to each form CA–1032 submitted to OWCP between 1990 and 2000. The government sought treble damages under the FCA in an amount to be determined at trial, as well as a $10,000 civil penalty for each of the Sforzas' false claims. The government also alleged several causes of action under federal common law based upon the same alleged conduct.

The Sforzas moved to dismiss for lack of subject matter jurisdiction, arguing principally that the district court's jurisdiction was barred by FECA's preclusion-of-review provision, codified in 5 U.S.C. § 8128(b), which states:

> The action of the Secretary or his designee in allowing or denying a payment under this subchapter is-

(1) final and conclusive for all purposes and with respect to all questions of law and fact; and

(2) not subject to review by another official of the United States or by a court by mandamus or otherwise.

*Id.* By Memorandum and Order dated December 11, 2000, the district court (Schwartz, *J.*) denied the motion on the ground that § 8128(b) "only precludes review of the decision by OWCP (the Secretary of Labor's Designee) to award or deny FECA benefits," and OWCP's decision to award benefits was not being directly challenged by the government. *See United States v. Sforza*, 00 Civ. 1307(AGS), 2000 WL 1818686, at *2–*6 (S.D.N.Y. Dec. 12, 2000). Discovery followed.

In August 2001, just before trial, settlement discussions were conducted under the auspices of Magistrate Judge Maas. The judge met separately with each party (off the record), and then (on the record) obtained the parties' agreement to settle the case for $200,000, subject to one contingency: a sign-off from the Chief of the Civil Division of the United States Attorney's Office for the Southern District of New York. The Sforzas acknowledged on the record that the agreement announced by Judge Maas included "the terms that [each had] agreed to."

However, after the required sign-off was given by the Chief of the Civil Division, the Sforzas refused to execute the written settlement agreement prepared by the government, and denied to the district court that there had been a meeting of the minds. According to the Sforzas, they had intended that the release cover *criminal* liability as well as civil claims, thereby assuring that Josephine Sforza be protected from prosecution for her complicity. The government tendered a letter disclaiming any present intention to prosecution Josephine Sforza, but refused to provide the extraordinary release on which the Sforzas insisted.

The district court (Freeman, *M.J.*) nevertheless entered an Order and Final Judgment on December 11, 2001, directing the Sforzas to pay $200,000 to the government in exchange for general releases, and dismissing the case with prejudice. *United States v. Sforza*, 00 Civ. 1307(DF), at 3–4 (S.D.N.Y. Dec. 11, 2001). The court ruled that the oral statements on the record constituted a legally binding contract to exchange $200,000 for a release from civil (but not criminal) liability. *Id.*

## DISCUSSION

On appeal, the Sforzas challenge (1) the December 11, 2000 ruling denying their motion to dismiss for lack of subject matter jurisdiction, and (2) the December 11, 2001 ruling that the oral agreement to settle the case constituted a legally binding contract.

### I. Jurisdiction

■ We review the district court's legal rulings as to its own jurisdiction *de novo*. *See Jaghory v. New York State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir.1997). In doing so, we apply the same standard as the district court, under which a court may dismiss for lack of subject matter jurisdiction only if it appears that the plaintiff can prove no set of facts that would support jurisdiction. *See Hosp. Bldg. Co. v. Trs. of Rex Hosp.*, 425 U.S. 738, 742 n. 1, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

### A

It is uncontested that the FCA, by its terms, provides subject matter jurisdiction. Under the FCA, a violation occurs whenever a person:

(1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval;

(2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government; [or]

(3) conspires to defraud the Government by getting a false or fraudulent claim allowed or paid . . . .

31 U.S.C. § 3729(a). The complaint alleges that the Sforzas conspired to submit false claims to OWCP to obtain FECA benefits, and thus adequately invokes jurisdiction under the FCA.

■ Defendants' principal argument is that FECA precludes the district court from exercising its FCA jurisdiction. This argument cuts against well-established law that strongly disfavors preclusion of one federal statute by another absent express manifestations of preclusive intent. *See United States v. General Dynamics Corp.*, 19 F.3d 770, 774 (2d Cir. 1994) (citing *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 154, 96 S.Ct. 1989, 48 L.Ed.2d 540 (1976)). Courts "are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Local 1814, Int'l Longshoremen's Ass'n, AFL–CIO v. New York Shipping Ass'n*, 965 F.2d 1224, 1237 (2d Cir.) (quoting *Morton v. Mancari*, 417 U.S. 535, 551, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974)), *cert. denied*, 506 U.S. 953, 113 S.Ct. 406, 121 L.Ed.2d 331 (1992). To overcome the presumption against pre-

clusion, defendants must demonstrate a clear congressional intent to preclude, or a positive repugnancy between the two federal statutes. *See Traynor v. Turnage*, 485 U.S. 535, 548–49, 108 S.Ct. 1372, 99 L.Ed.2d 618 (1988); *United States v. Batchelder*, 442 U.S. 114, 122, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979).

**B**

■ In arguing that § 8128(b) of FECA precludes this suit, defendants rely on *Lindahl v. Office of Personnel Management*, 470 U.S. 768, 105 S.Ct. 1620, 84 L.Ed.2d 674 (1985), which concerned whether a jurisdiction-stripping provision in the Civil Service Retirement Act barred a suit by an employee seeking direct judicial review of the denial of his benefits claim by an administrative agency. *See id.* at 771, 105 S.Ct. 1620. In discussing this (otherwise wholly distinguishable) case, the Supreme Court referenced § 8128(b) as an example of the sort of provision Congress used when it intended to "bar judicial review altogether." *See id.* at 779–80 & n. 13, 105 S.Ct. 1620. That characterization, however, begs a question: review of *what?* The defendants' hopeful answer is: review of any issue that might disturb an award or denial of benefits under FECA. But the Supreme Court itself has rejected such a broad reading of FECA's jurisdictional bar by implicitly holding that § 8128(b) does not preclude a government suit to recover FECA benefits awarded to an employee who also recovered from a third party tortfeasor. *See United States v. Lorenzetti*, 467 U.S. 167, 173, 104 S.Ct. 2284, 81 L.Ed.2d 134 (1984) (holding that the government had a right to reimbursement in such a situation, without any discussion of § 8128(b)).[1] Many

---

1. The Third Circuit, discussing *Lorenzetti*, explained why review was not barred: "the

question had changed from one dealing with the unreviewable discretion of the [OWCP]—

sister circuits have held that § 8128(b) lacks preclusive effect on an employee's suit raising a constitutional challenge to an OWCP denial of FECA benefits. *See, e.g., Czerkies v. United States Dep't of Labor,* 73 F.3d 1435, 1440 (7th Cir.1996) (in banc); *Benton v. United States,* 960 F.2d 19, 22 (5th Cir.1992) (per curiam); *Woodruff v. United States Dep't of Labor,* 954 F.2d 634, 639 (11th Cir.1992) (per curiam); *Paluca v. Secretary of Labor,* 813 F.2d 524, 525–26 (1st Cir.1987); *see also Lepre v. Dep't of Labor,* 275 F.3d 59, 61 (D.C.Cir. 2001). Additionally, some circuits have held that § 8128(b) does not bar jurisdiction even over a direct appeal by an employee denied benefits, so long as the employee argues in federal court that OWCP violated a clear statutory mandate under FECA. *See Hanauer v. Reich,* 82 F.3d 1304, 1307–09 (4th Cir.1996); *Woodruff v. United States Dep't of Labor,* 954 F.2d 634, 639–40 (11th Cir.1992); *Staacke v. United States Sec'y of Labor,* 841 F.2d 278, 282 (9th Cir.1988). *But see McDougal–Saddler v. Herman,* 184 F.3d 207 (3d Cir.1999) (reaching opposite result).

None of these cases treats § 8128(b) as an absolute bar to jurisdiction over claims in which a factual or legal conclusion previously reached by OWCP in awarding or denying FECA benefits might be undermined or even reversed. Moreover, the absolute bar urged by defendants would prohibit a criminal sentence of restitution for defrauding the government of FECA benefits in violation of 18 U.S.C. § 1920— despite the fact that restitution is manda-

tory in that circumstance. *See* 18 U.S.C. §§ 3663A(a)(1) & 3663A(c)(1) (prescribing mandatory restitution in cases involving theft of property by fraud); United States Sentencing Guidelines Manual § 5E1.1 (stating that in any case with an "identifiable victim, the court *shall*" order restitution) (emphasis added). Defendants suggest that § 8128(b) can be read to preclude a civil suit under the FCA but not restitution in a criminal case, but they offer no rationale for this assertion, and we see no basis in § 8128(b) itself for such a rule.

■ We think that the text of § 8128(b) delimits the jurisdictional bar to cases in which consideration of the government's FCA claim would necessarily entail a relitigation of OWCP's decision to pay benefits in the first instance:

> The action of the Secretary or his designee *in allowing or denying a payment under this subchapter* is-
>
> (1) final and conclusive for all purposes and with respect to all questions of law and fact; and
>
> (2) not subject to review by another official of the United States or by a court by mandamus or otherwise.

5 U.S.C. § 8128(b) (emphasis added). The government's suit here seeks treble damages and civil penalties based on the Sforzas' actions in affirmatively defrauding OWCP. Such a suit is not based upon a presupposition that OWCP erred, since OWCP could have correctly awarded benefits based on the information that the Sforzas fraudulently submitted to it.[2] Thus,

---

'allowing or denying a payment'—to one involving the question of *reimbursement* out of a tort judgment rendered under a state no-fault insurance statute." *Paluca v. Sec'y of Labor,* 813 F.2d 524, 528 (1st Cir.1987) (emphasis in original).

2. The § 8128(b) bar on jurisdiction might be implicated by claims that assumed the invalidity of OWCP's entitlement determinations,

*see United States v. Carpentieri ("Carpentieri II"),* No. 96 CIV. 6460(LBS), 1999 WL 13729, at *3 (S.D.N.Y. Jan.12, 1999) (holding that § 8128(b) barred jurisdiction over FCA claims to the extent they alleged fraud based solely upon beneficiary's endorsement and deposit of FECA benefit checks); but dismissal is appropriate only if the plaintiff can prove no set of facts that would support jurisdiction,

the text of § 8128(b) does not by its own express terms preclude the government's suit under the FCA here.

## C

 Defendants next argue (quite sensibly) that the jurisdictional bar in § 8128(b) should be read together with other sections of FECA. Specifically, they contend that jurisdiction under the FCA is precluded by 5 U.S.C. § 8129, which allows OWCP to recover "overpayments," and by § 8148, which triggers the "forfeit[ure]" of entitlement in certain circumstances. Neither provision, however, changes our reading of § 8128(b), since neither furnishes an adequate mechanism either for recovering benefits that were obtained through fraud or for deterring fraud generally.

Section 8129 concerns "overpayments" made by reason of "an error of fact or law," which are to be "adjust[ed]" by "decreasing later payments":

*When an overpayment has been made to an individual under this subchapter because of an error of fact or law, adjustment shall be made under regulations prescribed by the Secretary of Labor by decreasing later payments to which the individual is entitled.*

5 U.S.C. § 8129 (emphasis added). This provision does not deal with fraud. The fraud of a beneficiary is not an "error" of the OWCP. Furthermore, once the beneficiary is convicted of fraud, recovery of overpayments through adjustments under § 8129 becomes impossible, since § 8148, which *does* furnish a remedy in cases of fraud, provides that a fraud conviction viti-

ates entitlement, so that there *are* no such "later payments":

*Any individual convicted of a violation of section 1920 of title 18, or any other Federal or State criminal statute relating to fraud in the application or receipt of any benefit under this ... chapter, shall forfeit (as of the date of such conviction) any entitlement to any benefit such individual would otherwise be entitled to under this ... chapter for any injury occurring on or before the date of such conviction.*

5 U.S.C. § 8148 (emphasis added). Moreover, this provision terminates the entitlement as of the date of a fraud conviction without, however, providing for the recovery of any sum to which the claimant had an entitlement in the past. Neither § 8129 nor § 8148 affords a remedy for the forfeiture or recovery of *benefits* to which the claimant *was entitled* by an award decision rendered by OWCP according to the record then before it. In other words, neither provision allows the government to recoup benefits previously paid for an entitlement achieved by fraud. And to the extent that the cited provisions allow for *prospective* recovery in cases of fraud, recovery is limited to the value of the benefit itself, thereby providing no real economic disincentive to defraud the government.

The FCA does allow for the full recovery of benefits obtained by fraud, and for the deterrence of fraud by including treble damages and civil penalties ranging from $5,000 to $10,000 per violation.[3] *See* 31

---

*Hosp. Bldg. Co. v. Trs. of Rex Hosp.*, 425 U.S. 738, 742 n. 1, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976).

**3.** These penalties were expanded through amendments enacted in 1986, *see* False Claims Amendments Act of 1986, Pub.L. No. 99–562, 100 Stat. 3153 (1986) (codified at 31

U.S.C. §§ 3729–3733 (1988)), long after § 8128(b) took effect, *see* Act of July 28, 1945, ch. 328, § 4, 59 Stat. 504. The FCA has recently been amended to provide for civil penalties between $5,500 and $11,000 per false claim, but these penalties apply only to false claims submitted after September 29,

U.S.C. § 3729(a). Thus the remedies available under FECA and the FCA complement each other, suggesting that Congress intended to allow FCA claims to proceed notwithstanding § 8128(b), *see Smith v. Horner*, 846 F.2d 1521, 1527 (D.C.Cir.1988) (Silberman, J., concurring) (stating that jurisdiction is not defeated by a door closing provision where the remedies sought are distinct even though "[t]he same facts may have been relevant to both proceedings"). This view is consistent with the categorical observation that the FCA was "intended to reach all types of fraud, without qualification, that might result in financial loss to the Government." *United States v. Gen. Dynamics, Corp.*, 19 F.3d 770, 773 (2d Cir.1994) (citing *United States v. Neifert–White Co.*, 390 U.S. 228, 232, 88 S.Ct. 959, 19 L.Ed.2d 1061 (1968)).

■ The evolution of the FECA text over time demonstrates to our satisfaction that it is not intended to preclude actions for fraud brought under the FCA. As enacted in 1916, FECA contained no preclusion of judicial review. *See Czerkies v. United States Dep't of Labor*, 73 F.3d 1435, 1440–41 (7th Cir.1996) (in banc) (discussing legislative history of § 8128(b)). The preclusion measure added by amendment in 1924 expressly exempted fraud claims in a way that present-day § 8128(b) does not:

> *in the absence of fraud* or mistake in mathematical calculation, the finding of facts in, and the decision of the commission [the predecessor to OWCP] upon, the merits of any claim presented under or authorized by this Act if supported by competent evidence shall not be subject to review by any other administrative or accounting officer, employee, or agent of the United States.

1999, and therefore are inapplicable to the

43 Stat. 389 (1924) (emphasis added). This limitation on judicial review was supplemented in 1945 by a provision which (later) became § 8128(b), and which was integral to a postwar section of the law designed to allow compensation based on local law for wartime injuries suffered by non-citizens employed by the United States abroad. *See Czerkies*, 73 F.3d at 1441. A technical 1966 amendment removed the 1924 jurisdictional bar as redundant, i.e., "as included in" what is now § 8128(b). *Id.* (citing H.R.Rep. No. 901, 89th Cong., 1st Sess. 146 (1965); 80 Stat. 545–46 (1966)). Section 8128(b) thus became FECA's only jurisdictional bar. Since the 1924 wording that was omitted "as included in" § 8128(b) *expressly* stated that the jurisdictional bar applied only "in the absence of fraud," it seems plain enough that Congress did not intend for § 8128(b) to preclude claims under the FCA. In any event, there was a fraud carve-out prior to 1966, and "it will not be inferred that Congress, in revising and consolidating the laws, intended to change their effect unless such intention is clearly expressed." *Finley v. United States*, 490 U.S. 545, 554, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989) (quoting *Anderson v. Pacific Coast S.S. Co.*, 225 U.S. 187, 199, 32 S.Ct. 626, 56 L.Ed. 1047 (1912)).

The jurisdictional bar in § 8128(b) seems to have been designed chiefly to ensure "[1] that the courts not be burdened by a flood of small claims challenging the merits of compensation decisions and [2] that the Secretary should be left free to make the policy choices associated with disability decisions." *Rodrigues v. Donovan*, 769 F.2d 1344, 1347–48 (9th Cir. 1985) (citations omitted) (holding that § 8128(b) did not preclude litigation of constitutional due process challenge to procedures used by OWCP in denying

instant case. *See* 64 Fed.Reg. 47,099 (1999).

benefits). Neither goal is disserved by allowing the government to pursue fraudulent claim-seekers under the FCA (at least so long as OWCP's decision awarding or denying benefits on the basis of the record before it is respected). *See United States v. Carpentieri ("Carpentieri I")*, 23 F.Supp.2d 433, 438 (S.D.N.Y.1998) (holding that § 8128(b) does not bar suit under the FCA because the government's FCA suit would not "entail a re-litigation of issues already presented to and resolved by the OWCP").

Our reading of § 8128(b) is consistent with decisions of other courts in analogous cases. Thus the Federal Circuit held in *Minor v. Merit Systems Protection Board*, 819 F.2d 280 (Fed.Cir.1987), that § 8128(b) does not bar an action seeking the termination of a civil service employee based upon allegations of FECA fraud, notwithstanding a prior determination by OWCP that the employee was entitled to full benefits. *See id.* at 283. The court relied on the different remedies at issue in the OWCP action and the civil service proceeding: "[e]ven though much the same facts and evidence may have been before the [arbitrator deciding whether the FECA beneficiary could be terminated,]

and also before the [OWCP deciding whether benefits were warranted], it was the [arbitrator] that had power to decide [the employee's] fraudulent acts and to remove her on that ground." [4] *Id.* The Third Circuit, facing a similar issue, likewise rejected the claim that § 8128(b) precluded re-litigation of all issues decided by OWCP. *See Nat'l Ass'n of Letter Carriers, AFL–CIO, v. United States Postal Serv.*, 272 F.3d 182, 188–89 (3d Cir.2001) (holding that arbitrator of employee's wrongful termination claim was not bound by factual determinations made by OWCP in granting employee FECA benefits).[5]

We thus affirm the district court's ruling denying the Sforzas' motion to dismiss the government's FCA claims for lack of jurisdiction.[6]

## II. Enforcement of Settlement Agreement

Defendants also challenge the district court's enforcement of the settlement agreement on the ground that they never agreed to settle without a full release from all possible civil or criminal liability for both of the Sforzas. An agreement to end a lawsuit is construed according to contract principles. *See Janus*

---

4. The Merit Systems Protection Board, which reviews the decisions of arbitrators such as those at issue in *Minor*, has similarly read § 8128(b) to preclude relitigation of OWCP's decisions concerning the award or denial of FECA benefits but to not preclude judicial review of collateral issues such as whether an employee has defrauded the government. *See Miller v. U.S. Postal Serv.*, 26 M.S.P.R. 210, 213 (1985); *see also Smith v. U.S. Postal Serv.*, 81 M.S.P.R. 92, 98 (1999); *Daniels v. U.S. Postal Serv.*, 57 M.S.P.R. 272, 279 (1993).

5. In reaching its conclusion regarding the scope of § 8128(b), the Third Circuit relied in part on the fact that OWCP proceedings are non-adversarial:

 [I]t would be strange if a determination in a non-adversarial proceeding had a preclu-

sive effect in an adversarial proceeding as "the general rule [is] that issue preclusion attaches only '[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment ....'" *Arizona v. California*, 530 U.S. 392, 414, 120 S.Ct. 2304, 147 L.Ed.2d 374[ ] (2000). While we do not suggest that Congress could not make a ruling under section 8128(b) preclusive in the circumstances here, we hold that it did not do so.

*Nat'l Ass'n of Letter Carriers*, 272 F.3d at 189.

6. Defendants also argue that § 8128(b) precludes the government's claims brought under federal common law. We do not reach this argument, because jurisdiction under the FCA is sufficient to support the judgment.

*Films, Inc. v. Miller,* 801 F.2d 578, 583 (2d Cir.1986). The meeting of minds is an issue to be determined by examination of the totality of the circumstances. *See Ciaramella v. Reader's Digest Ass'n,* 131 F.3d 320, 322 (2d Cir.1997).

Here, there is ample evidence in the record that the parties reached a meeting of the minds. First, the court recited on the record at the settlement conference the understanding that the parties had reached an agreement which involved an "exchange [of] mutual releases, *general releases,*" (emphasis added), after which the Sforzas each stated that the settlement thus characterized was agreeable. Second, the Sforzas' contention that the releases would protect them from criminal liability is belied by the fact that the sole condition required by the government was the sign-off of the Chief of the *Civil* Division.

We see no error in entering judgment on the terms agreed to by the parties on the record. *See Janus Films,* 801 F.2d at 583 ("Due regard for the proper use of judicial resources requires that a trial judge proceed with entry of a settlement judgment after affording the parties an opportunity to be heard as to the precise content and wording of the judgment ....."). The district court's ruling enforcing the agreement to settle is affirmed.

## CONCLUSION

For the reasons stated, the judgment is affirmed.