[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-16536

_____

D.C. Docket No. 1:12-cv-20485-JIC


ARYS R. CABRERA,

Plaintiff-Appellant,

versus

U.S. DEPARTMENT OF TRANSPORTATION,
Ray LaHood, Secretary of Transportation,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(June 11, 2014)

Before MARCUS, FAY, and WALKER,[*] Circuit Judges.

PER CURIAM:

_____

[*] Honorable John Walker, Jr., United States Circuit Judge for the Second Circuit, sitting by designation.

Arys R. Cabrera appeals the summary judgment granted to his former employer, the United States Department of Transportation ("DOT"), in his Title VII, 42 U.S.C. § 2000e et seq., employment retaliation action.  Because Cabrera's Title VII retaliation claim is not barred by the Federal Employees' Compensation Act ("FECA"), 5 U.S.C. § 8101 et seq., we vacate and remand for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Cabrera, a Hispanic male of Cuban origin, was employed by DOT as an Air Traffic Control Specialist, Radar Controller at the Miami Enroute Air Traffic Control Center ("Miami Center") from 1981 to 2010.  While at the Miami Center, Cabrera had engaged in various administrative proceedings concerning his DOT employment.[1]  A previous Title VII action and a FECA proceeding provide related background for the Title VII action we address in this appeal.

A. 2006 Title VII Action

On July 29, 2006, Cabrera was administered a skills test, which was part of DOT's regular evaluation for air traffic controllers.  *Cabrera v. Sec'y, Dep't of Transp.*, 468 F. App'x 939, 940 (11th Cir. 2012) (per curiam).  Because his test results showed deficiencies in "'control judgment,' 'methods and procedure,' and

_____

[1] At his deposition, Cabrera testified that "at least four other injuries" had occurred at Miami Center, and he had received the employee's benefits he had sought.  Cabrera Dep. (July 23, 2012) at 37.

2

'communication,'" DOT gave him a second skills test on August 2, 2006. *Id.*

When the second test also revealed deficiencies, Cabrera's supervisors revoked his

certification to work as an air traffic controller. *Id.* Following remedial training

and completing a successful skills test in November 2006, DOT restored

Cabrera's certification as an air traffic controller.[2] *Id.*

Because Cabrera believed the decisions to give him a second skills test and

to decertify him were based on his national origin, he filed a complaint with the

Equal Employment Opportunity Commission ("EEOC"). *Id.* Although he was on

medical leave for anxiety problems pursuant to a psychologist's recommendation

that he should not work as an air traffic controller, Cabrera further contended DOT

had retaliated against him for filing his EEOC complaint by not letting him lead a

tour of the air-traffic-control facility at the Miami Center. *Id.* Cabrera filed a Title

VII action, alleging national origin discrimination and retaliation for his filing an

EEOC complaint.

The district judge granted summary judgment to DOT. Affirming on appeal,

we determined regarding the discrimination claim "that Cabrera's arguments are

not sufficiently probative of pretext to withstand a motion for summary judgment."

*Id.* at 942 (approving district judge's analysis under *Alvarez v. Royal Atl.*

---

[2] Cabrera received his full salary, while he was decertified.

3

*Developers, Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010), and *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 771 (11th Cir. 2005) (per curiam)).  Regarding his retaliation claim, we concluded: "Cabrera has failed to present sufficient evidence that he suffered an adverse employment action that is related to the filing of his EEOC complaint, and he cannot withstand a summary judgment challenge." *Id.* (referencing *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008)).

B. 2010 FECA Proceedings

On April 30, 2010, Cabrera was watching his radar screen in performing his job as an air traffic controller at the Miami Center.  His area of control abutted airspace controlled by the Havana Air Control Center ("Havana Center").  Cabrera noticed two northbound airplanes in Havana Center's airspace were approaching his control area.  He perceived the trailing plane was moving faster on a collision course with the lead plane.  Although Cabrera was not controlling the two planes, which had not entered his airspace, he separated them to prevent a collision.

Cabrera was so disturbed by his involvement in the possible collision of the two planes that paramedics were called, and he was taken to a hospital for medical attention.  Because of suffering emotional trauma from this incident, Cabrera was unable to return to work as an air traffic controller at  the Miami Center and subsequently separated from his DOT employment.  Consequently, he

4

submitted a claim for total disability from anxiety and panic disorders to the

Office of Workers' Compensation Programs ("OWCP"), operated under the United

States Department of Labor.

In the June 18, 2010, OWCP decision, the Claims Examiner reviewed the

five prerequisites for a FECA claim.  It must be (1) timely filed, (2) by a federal

civil employee, (3) who establishes the injury factually and medically (4) that

occurred in the performance of duty, and (5) medical evidence shows a causal

relationship between the work event and the injury.  While Cabrera had met

four of the five requirements, the Claims Examiner determined he had failed to

show he was performing his duties, when the precipitating event occurred.  That

conclusion was based on DOT's representations that Cabrera "was not

responsible for the separation of the aircraft involved at the time of this

incident," because the planes had not entered the Miami Center airspace and

were still under the separation control of the Havana Center, which "was

providing the separation in their airspace."  OWCP Dec. at 2 (June 18, 2010).

DOT further had stated that "[t]here was no indication whatsoever that the

aircraft could have or would have collided," because the planes were separated

by 15 miles, when Cabrera acted.  *Id.*  The Claims Examiner decided:

"Specifically, your case is denied because *the evidence is not sufficient to*

*establish that the injury and/or medical condition arose during the course of*

5

*employment* and within the scope of compensable work factors." *Id.* (emphasis added). Based on this determination, the Claims Examiner concluded: "Medical treatment is not authorized and prior authorization, if any, is terminated." *Id.* at 3.

Following this decision, Cabrera requested an OWCP hearing, which occurred on November 8, 2010. In affirming the June 18, 2010, OWCP decision on June 1, 2011, the OWCP hearing representative concluded the evidence did not show that Cabrera had operational responsibility for the two planes, which failed to establish a compensable work incident. On August 11, 2011, Cabrera requested reconsideration and submitted a June 9, 2011, reprimand letter, concerning a similar occurrence of potential collision between two incoming planes on November 21, 2009. On that occasion, Cabrera did not act to separate the planes, because he had advised one of them to return to Havana Center's frequency. The reprimand stated: "Havana should have provided positive separation between these two aircraft, however, when that separation was not assured *you had an obligation to resolve that conflict*." Reprimand Letter (June 9, 2011) at 2-3 (emphasis added).

On September 30, 2011, OWCP denied Cabrera's request for reconsideration of its June 18, 2010, decision. Cabrera again requested reconsideration on January 24, 2012, and attached the coordination agreement

6

regarding airspace between the Havana Center and the Miami Center.  On February 22, 2012, OWCP denied modification of its June 18, 2010, decision.  It concluded the evidence failed to establish the two planes were in Cabrera's assigned airspace or that there was a separation loss between the two planes that required emergency action.

Cabrera then appealed the final OWCP decision to the United States Department of Labor Employees' Compensation Appeals Board ("ECAB").  On December 28, 2012, the ECAB reversed the OWCP, granted Cabrera relief, and remanded the case for the OWCP to consider Cabrera's medical evidence.[3]  For an injury to occur in the course of employment, the ECAB noted that three requirements must be satisfied: (1) the employee must be reasonably engaged in his master's business (2) in a place where he is reasonably expected to be for his employment, and (3) he is reasonably fulfilling his duties or something incidental thereto.  ECAB Dec. (Dec. 28, 2012) at 3-4 (citing *Carmen B. Gutierrez*, 7 ECAB 58 (1954)).  The ECAB judges specifically noted "where disability results from an employee's emotional reaction to his regular or specially assigned work duties or to a requirement imposed by the employment, *the*

---

[3] Although the December 28, 2012, ECAB decision resolved the issue of whether Cabrera was acting within his air-traffic-control responsibilities on April 30, 2010, when the incident in question occurred, it was not part of the record on appeal at oral argument on January 14, 2014.  When the issuance of the ECAB decision was revealed by counsel at oral argument, the panel requested counsel to supplement the record with it and to provide the court with letter briefs discussing its relevance and effect on this case.

7

*disability comes within the coverage of FECA.*"  *Id.* at 3 (citing *Lillian Cutler*, 28 ECAB 125 (1976)) (emphasis added).  The ECAB concluded Cabrera "was performing his regular duties as an air traffic controller under *Cutler* when the potential collision arose, a situation he took effort to remedy."  *Id.* at 4.  The significance of the December 28, 2012, ECAB decision is that it resolves Cabrera's eligibility for FECA benefits.[4]

C. 2012 Title VII Action

While pursuing his OWCP proceedings, Cabrera had filed a retaliation complaint with the EEOC and alleged DOT had retaliated against him for his 2006 Title VII discrimination action.  This retaliation consisted of DOT's providing inaccurate information to the OWCP by representing Cabrera was not performing his duties, when he separated planes he believed would collide.  The EEOC dismissed the complaint and concluded Cabrera was "improperly attempting to use the EEO process to collaterally attack the outcome of the workers' compensation process."  EEOC Dec. at 2 (Nov. 10, 2011).  After exhausting the EEOC administrative process, Cabrera filed a Title VII retaliation action in the Southern District of Florida on February 7, 2012.  *Cabrera v. Sec'y., U.S. Dep't of Transp.*, No. 1:12-cv-20485-JIC.  Cabrera alleged DOT

---

[4] While the remand OWCP decision after considering Cabrera's medical evidence is not in the record, at oral argument, counsel for Cabrera informed the court he is receiving FECA benefits.  At his deposition on July 23, 2012, Cabrera testified OWCP was paying his medical benefits.  Cabrera Dep. at 44-45.

had retaliated against him in his FECA proceedings for his 2006 Title VII action by providing false information regarding his air-traffic-controller duties. Among the remedies Cabrera sought were "[d]eclaratory, injunctive, equitable relief, lost wages, salary, employment benefits and other compensatory and punitive damages" under 42 U.S.C. § 2000e-5 and attorney's fees under 42 U.S.C. § 2000e-5(k). Complaint at 1-2. More specifically, under his one-count retaliation claim, Cabrera states, because of DOT's failing to provide him employment benefits resulting from his emotional trauma suffered while he was executing his duties, he will "be deprived of income in the form of wages and of prospective benefits." Complaint at 3. He further requests that he be made "whole for all earnings and other benefits he would have received but for [DOT's] discriminatory treatment, including but not limited to wages, pension, and other lost benefits," and "compensatory damages for past, present and future mental anguish, pain and suffering, and humiliation caused by the intentional discrimination." Complaint at 4.

On October 12, 2012, DOT moved for summary judgment and argued the retaliation suit was a collateral attack on the OWCP proceedings, and FECA remedies were exclusive, preempting an action against the United States under 5 U.S.C. § 8145. Concluding that Cabrera's "claim impermissibly, collaterally attacks the decision of the OWCP," the district judge decided he lacked subject

9

matter jurisdiction, granted summary judgment to DOT, and entered final judgment on November 20, 2012.  Summ. J. Order at 5.   Cabrera appealed the summary judgment granted to DOT on December  19, 2012.

In the course of the district court proceedings, there is no evidence the district judge was informed that the February 22, 2012, OWCP decision, confirming the June 18, 2010, OWCP decision, had been appealed to the ECAB, which had not issued its decision.  The December 28, 2012, ECAB decision reversed the February 22, 2012, OWCP decision.  Therefore, the ECAB decision held Cabrera was entitled to the FECA benefits he had sought for his emotional trauma suffered in performing his air-traffic-control duties.

## II. DISCUSSION

On appeal, Cabrera maintains the district judge had subject matter jurisdiction to adjudicate his retaliation claim under Title VII, which is a separate cause of action from his FECA proceedings.  DOT pursues its argument that the district judge properly granted summary judgment for lack of subject matter jurisdiction, because Cabrera's claim in federal court is an impermissible collateral attack on his FECA proceedings.  We must decide whether the district judge had subject matter jurisdiction over Cabrera's Title VII action.  Whether a district judge has subject matter jurisdiction is a question of law we review de novo. *Holston  Invs., Inc. B.V.I. v. LanLogistics Corp.*, 677 F.3d 1068, 1070 (11th Cir.

10

2012) (per curiam).   Accordingly, granting summary judgment for lack of subject matter jurisdiction presents a question of law reviewed de novo.  *Woodruff v. U.S. Dep't of Labor, Office of Workers Compensation Program*, 954 F.2d 634, 636 (11th Cir. 1992) (per curiam).

"FECA provides workers' compensation coverage for federal civilian employees who are injured while in the performance of their duties."  *Id.*  (citing 5 U.S.C. § 8102(a)); *accord Noble v. United States*, 216 F.3d 1229, 1234 (11th Cir. 2000) ("Congress enacted FECA to provide benefits to federal employees injured or killed in the course of performing their duties.").  The Secretary of Labor administers FECA and promulgates rules and regulations to decide statutory questions.  *Woodruff*, 954 F.2d at 637 (citing 5 U.S.C. §§ 8145, 8149); *see id.* at 640 ("Congress has conferred on the Secretary absolute authority to enforce and administer FECA." (citing 5 U.S.C. § 8145)).  "[T]he Secretary has delegated responsibility for FECA management to the Director of the Office of Workers' Compensation Programs ("OWCP")."  *Id.* at 637.

The OWCP reviews employee claims and makes factual findings to determine if an employee is entitled to FECA compensation.  *Id.*  (citing 5 U.S.C. § 8124(a)).  An OWCP decision can be appealed to the ECAB, the appellate division of the Department of Labor.  *Id.*  (citing 5 U.S.C. § 8149).  ECAB decisions are final.  *Id.*  An OWCP decision to award or deny compensation to a claimant and

11

the factual findings and conclusions of law of the OWCP or ECAB are not subject to judicial review.[5]  *Id.* (citing 5 U.S.C. § 8128(b)).

DOT contends Cabrera improperly is using his Title VII retaliation claim to relitigate denial of his OWCP claim.  But the ECAB reversed the OWCP final decision, so Cabrera has won his FECA claim on appeal.  In this Title VII case, Cabrera seeks relief separate and apart from his FECA proceedings, "such as pain and suffering that are not compensated under FECA."  *United States v. Lorenzetti*, 467 U.S. 167, 169, 104 S. Ct. 2284, 2286 (1984).   "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, *laws*, or treaties of the United States."  28 U.S.C. § 1331 (emphasis added).  An employer cannot retaliate against an employee, who files a claim under Title VII.  42 U.S.C. § 2000e-3(a).  At this point, there can be no conflict between Cabrera's Title VII action and his claim under the Federal Employees' Compensation Act.  Because the remedies under these separate laws are different, the district judge did not lack subject matter jurisdiction to adjudicate Cabrera's Title VII retaliation case.  We vacate the summary judgment for DOT and remand with instructions for the district judge to proceed with Cabrera's Title VII retaliation action.[6]

---

[5] Federal courts have jurisdiction to review OWCP proceedings in two situations: (1) when there has been a violation of a "clear statutory mandate," or (2) for consideration of "constitutional claims."  *Woodruff*,  954 F.2d at 639.  Neither instance is involved in this case.
[6] The district judge did discuss the requirements for a prima facie retaliation case under Title VII without specifically applying the analysis to Cabrera: "a plaintiff must show that [] (1) he engaged in a statutorily protected activity; (2) he suffered a materially adverse employment

12

**VACATED AND REMANDED.**

---

action; and (3) there was a causal link between the protected activity and the adverse action." Summ. J. Order at 3 (citing *Gowski v. Peake*, 682 F.3d 1299, 1311 (11th Cir. 2012) (per curiam)).  He then stated the employer's ability to articulate a legitimate, non-retaliatory reason for the challenged employment action as an affirmative defense to liability.  *Id.* at 4.  Concerning pretext for the employer's action, the judge significantly states: "A reason is not pretextual unless it is shown both that the reason was false, and that retaliation was the real reason."  *Id.* at 5 (citing *Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006)).  This is precisely what Cabrera seeks the opportunity to do.  If he can prove a prima facie case of retaliation, then he seeks relief under Title VII, not FECA.  While both causes of action derive from one factual situation, the relief Cabrera sought in his FECA proceedings is different from the remedies he pursues under Title VII in this case.  *See United States v. Sforza*, 326 F.3d 107, 111-12 (2d Cir. 2003) (recognizing FECA jurisdictional bar, 5 U.S.C. § 8128(b), does not prohibit the government from suing under the False Claims Act, 31 U.S.C. § 3729 et seq., for FECA benefits fraudulently obtained by defendants-appellants).